# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2824

_____

John S. La Tour,

      Plaintiff-Appellant,

    v.

City of Fayetteville, Arkansas;
Brandt Warwick; Casey Jones;
Kit Williams; Bob Estes; Mike
McKimmey, Defendants, in both
their individual and official capacities,

      Defendants-Appellees.

Appeal from the United States
District Court for the Western
District of Arkansas.

_____

Submitted: March 31, 2004
Filed: April 6, 2006

_____

Before MELLOY, HANSEN, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

John S. La Tour appeals several district court[1] orders in his 42 U.S.C. § 1983 challenge to the constitutionality of a municipal ordinance prohibiting him from displaying a flashing or blinking electronic sign. We affirm.

_____

[1] The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

I.

La Tour is a certified public accountant who lives and works in Fayetteville, Arkansas (the "City"). On December 23, 1999, he contacted the City's sign inspector to inquire about purchasing a sign for the window of his office. The inspector told La Tour that indoor signs were not regulated.[2] La Tour then purchased an electronic sign that displays messages up to twenty-one characters long. The sign can be programmed to display one set of characters, go blank, and then display another set of characters. Used in this manner, the sign can display messages that would not fit on the sign if used only in a non-flashing, static mode. After La Tour used the sign to display political messages,[3] City officials ordered him to remove the sign because it violated Unified Development Ordinance Section 174.08(B) (the "Ordinance"), which prohibits any "sign which flashes, blinks, or is animated."[4] This section does not contain any exceptions, but the City admits that it has not enforced the regulation with respect to flashing signs that display only the time and/or temperature, without advertising matter. The parties agree that La Tour's sign operates in the same manner as the time and temperature signs that the City allows.

When La Tour refused to remove the sign, the City filed a criminal summons. La Tour was tried and convicted in municipal court. He appealed the conviction, and the City settled the case. The City agreed to allow La Tour to change the message on

---

[2] The City claims that La Tour did not inform the inspector that he was interested in purchasing an electronic sign that would be displayed to persons outside his office.

[3] La Tour's messages included the statements: "Choose Life," "God Listens," and "RecallCoody.com."

[4] The district court also examined other provisions in Chapter 174 of the Ordinance and found several to be unconstitutional. The City has not appealed that ruling.

his sign once every three hours and refunded his fines and court costs. La Tour then filed a claim in the United States District Court for the Western District of Arkansas on January 3, 2002, seeking civil damages under 42 U.S.C. § 1983. The district court found some sections of the Ordinance unconstitutional, but held that Section 174.08(B) was constitutional on its face and as applied. The district court also found that La Tour's rights under the Equal Protection Clause had not been violated and denied La Tour's request to amend his complaint to add certain City officials as defendants. In a separate ruling, the district court prohibited La Tour from presenting evidence regarding additional signs in and around the City. La Tour timely appealed.

## II.

We assume, without deciding, that La Tour successfully preserved an objection to the district court's ruling which excluded La Tour from offering testimony regarding other flashing signs. "We review a trial court's evidentiary rulings under the abuse of discretion standard, affording the district court substantial deference." Shelton v. Consumer Prods. Safety Comm'n, 277 F.3d 998, 1009 (8th Cir. 2002). After a careful review of the record, we believe that La Tour's proffered evidence would not have significantly impacted the constitutional analysis. As such, we find no abuse of discretion in excluding it.

We engage in de novo review of the district court's determination that the Ordinance is constitutional. Fraternal Order of Police v. Stenehjem, 431 F.3d 591, 596 (8th Cir. 2005). Before making our own determination of the constitutionality of the Ordinance, we must determine which level of scrutiny to apply. Whitton v. City of Gladstone, 54 F.3d 1400, 1403 (8th Cir. 1995), If the Ordinance is content-based, it faces exacting scrutiny. Burson v. Freeman, 504 U.S. 191, 198 (1992). If the Ordinance is content-neutral, it faces only intermediate scrutiny. United States v. Dinwiddie, 76 F.3d 913, 923 (8th Cir. 1996).

The Ordinance is clearly content-neutral on its face as it does not allow any flashing, blinking or animated signs, regardless of their content. However, La Tour argues that the Ordinance is content-based "as applied" because City officials do not prohibit flashing signs that display time and temperature readings. La Tour argues that anytime one must look at the contents of a message to determine if it is prohibited, the regulation at issue must necessarily be content-based. In support of this argument, La Tour cites our statement in Whitton that "a restriction on speech is content-based when the message conveyed determines whether the speech is subject to the restriction." 54 F.3d at 1403-04.

There are a number of reasons that Whitton is distinguishable. First, the regulation in Whitton was deemed to be content-based on its face, whereas the Ordinance is only arguably content-based as applied. Second, the regulation in Whitton imposed restrictions only on one type of speech: political election signs. The Ordinance bans all flashing signs and, as applied, only provides one narrow exception for signs displaying the time and temperature. Third, although one technically has to examine the content of the signs in each case to see if the sign is prohibited, the inquiry is much more searching in Whitton. It takes some analysis to determine if a sign is "political," but one can tell at a glance whether a sign is displaying the time or temperature. Fourth, and most importantly, we found that the regulation in Whitton did not apply restrictions "to *identical signs* displaying nonpolitical messages which present *identical concerns*." 54 F.3d at 1407 (emphasis in original). Here, the ubiquitous time and temperature signs allowed by the City do not pose identical concerns as signs that function similarly but that display messages that are more distracting. Allowing only time and temperature signs cannot be said to "give one side of a debatable public question an advantage in expressing its views to the people" or allow the City to "select the permissible subjects for public debate and thereby to control the search for political truth." City of Ladue v. Gilleo, 512 U.S. 43, 51 (1994) (internal quotations and citations omitted).

Even if Whitton could not be distinguished on its facts, it is not our most recent analysis of a content-based restriction. In Excalibur Group, Inc. v. City of Minneapolis, 116 F.3d 1216, 1220 (8th Cir. 1997), we stated that an ordinance "is content-neutral if it is 'justified without reference to the content of the regulated speech.'" (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)). Here, the City's desire to promote traffic safety is in no way tied to the content of the flashing signs it seeks to regulate. More recently, we also stated that "[a] regulation that distinguishes between speech activities likely to produce the consequences that it seeks to prevent and speech activities unlikely to have those consequences 'cannot be struck down for failure to maintain "content neutrality."'" Fraternal Order of Police, 431 F.3d at 596-97 (quoting Hill v Colorado, 530 U.S. 703, 724 (2000)) (reversing the district court's invalidation of a portion of an act which the district court deemed content-based because it banned telephone "solicitation" but not "advocacy"). We agree with the district court that, because a message displaying the time and/or temperature is short and rudimentary, such a message poses less of a traffic hazard than other messages. In light of all of these reasons, we find the Ordinance to be content-neutral.

Because the regulation is content-neutral, it is constitutional if it "is 'narrowly tailored to serve a significant governmental interest, and . . . leaves open ample alternative channels for communication of the information.'" United States v. Nenninger, 351 F.3d 340, 345-46 (8th Cir. 2003) (quoting Clark v. Cmty for Creative Non-Violence, 468 U.S. 288, 293 (1984)). The interests expressed by the City are esthetics and traffic safety. These are significant governmental interests. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08 (1981). To be narrowly tailored, the regulation does not have to be the least restrictive means of furthering the City's interest. Thorburn v. Austin, 231 F.3d 1114, 1120 (8th Cir. 2000). A message displaying the time and/or temperature poses less of a traffic hazard than other messages. Thus, the City may allow such an exception and still have a regulation that is narrowly tailored. We also agree with the district court that La Tour has ample

alternative channels to communicate his messages including non-electronic signs and his electronic sign operating in a non-flashing manner. Thus, the regulation is constitutional.

Because La Tour's Equal Protection claim is dependant on the argument that the City enforced the Ordinance in a content-based manner, that claim necessary fails. Similarly, because the Ordinance is constitutional, we reject all of La Tour's claims against the City officials who enforced the Ordinance. As such, we need not address whether La Tour should have been allowed to amend his complaint to add additional officials, whether those officials are entitled to absolute or qualified immunity, or whether La Tour is entitled to punitive damages.

III.

For the foregoing reasons, we affirm the orders of the district court.

COLLOTON, Circuit Judge, concurring in the judgment.

In his "as applied" challenge to Fayetteville's prohibition on flashing or blinking signs, John LaTour contends that it is impermissible under the First Amendment for the city to make one exemption to its overall ban by allowing time-and-temperature signs without advertising matter, while precluding him from operating a flashing sign on which he wishes to post various political and religious (and perhaps commercial) messages. The district court explained that the time-and-temperature signs at issue use no more than four characters, and that the alternating information on the signs need not be read together to gather meaning – that is, the current time has meaning independent of the current temperature.

LaTour, by contrast, wishes to display at least some longer messages that require several different displays to complete the statement on his sign, which has a

21-character capacity. (Add., Tab K, at 2). A passing motorist would thus be required to watch the sign long enough to read more than one of the alternating displays from LaTour's sign to perceive the meaning of the message communicated. As a result, LaTour's longer messages pose a greater distraction and traffic hazard than typical time-and-temperature signs, and to this extent, I agree with Judge Melloy's analysis as to why the distinction between the two varieties of signs is justified by concerns of traffic safety without reference to the content of the regulated speech. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Indeed, there is no showing that the time-and-temperature exemption would be available to a sign that required multiple displays to generate the same substantive "content" as the four-character signs that were found to be exempt, to wit: "The current time is ten thirty-nine in the morning, and the current temperature is sixty-eight degrees Fahrenheit and twenty degrees Celsius."

The more difficult question arises with regard to LaTour's apparent desire to flash messages that are short enough to appear in a single display, such as "recallcoody.com" or, as he hypothesizes in his brief on appeal, "Vote for Smith" and "Secure Liberty." Although the familiarity of a time-and-temperature sign may permit a motorist to absorb that message in a quick glance, while an unexpected reference to recalling an unfamiliar elected official may require longer mental concentration, the difference in threats to traffic safety between the two signs, standing alone, is less pronounced than in the case of the multi-screen display.

The stronger content-neutral justification for limiting the exemption to traditional time-and-temperature signs is the city's legitimate interest in preventing unlimited proliferation of flashing and blinking signs throughout Fayetteville. The district court found that only two time-and-temperature displays exist in the city (Add., Tab K, at 24), although LaTour asserts that such signs have been permitted for thirty years, (Reply Br. at 11), and the court found that time-and-temperature signs without advertising matter are thus unlikely to proliferate. (Add., Tab K, at 24). If

the city were to permit one flashing sign saying, "Vote for Smith" and "Secure Liberty," however, it would not be feasible thereafter to limit the proliferation of flashing signs without impermissibly favoring one side of a public question or limiting the permissible subjects for public debate. *See City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994). LaTour himself has predicted that flashing and blinking signs will proliferate if the signs are allowed to include opinions and ideas, (Add., Tab K, at 24), and while there was apparently no evidence available on this hypothetical question, the district court perceived a "sounder basis for believing" that proliferation of political, religious, and commercial signs would occur. *See also Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 817 (1984) (ordinance justified by finding that if signs were permitted to remain, they "would encourage others to post additional signs"). I thus find this situation distinguishable from the Supreme Court's "narrow" holding in *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 420, 428 (1993), where the city's prohibition of certain newsracks had "only a minimal impact on the overall number of newsracks on the city's sidewalks," *id*. at 418, and the ordinance thus lacked a content-neutral justification. *Id*. at 429-30.

The Supreme Court in *Gilleo* assumed, *arguendo*, the validity of the city's argument that an interest in avoiding unlimited proliferation of signs, with its attendant contribution to visual clutter and damage to aesthetics, made an exemption to a general prohibition on signs free from impermissible content discrimination. 512 U.S. at 52-53. The Court then found the city's ordinance unconstitutional on other grounds, because it "almost completely foreclosed a venerable means of communication that [was] both unique and important." *Id*. at 54. Unlike the aggrieved citizen in *Gilleo*, LaTour does not contend that the city's prohibition on flashing signs is unconstitutional because it prohibits too much speech. LaTour remains free to post painted or other static signs in his window, or to display an electronic sign that changes messages every three hours. (Add., Tab K, at 3). In light of the city's legitimate and substantial concerns with traffic safety and aesthetics, and the other avenues of expression that remain available to LaTour, the general ban on

-8-

flashing signs is not challenged. In his constitutional arguments on appeal, LaTour asserts only that the prohibition is underinclusive.[5]

Reaching the issue assumed in *Gilleo*, I conclude that prevention of proliferation of flashing signs is a content-neutral justification for the distinction made by Fayetteville between LaTour's proposed signs, which are likely to trigger proliferation, and time-and-temperature signs, which are not. A proliferation of flashing and blinking signs undoubtedly would interfere with Fayetteville's substantial interests in traffic safety and aesthetics. A motorist who encounters dozens of flashing signs on a wide range of ever-changing topics is likely to be more distracted than a driver who might steal a quick glance at a familiar sign displaying the current temperature. An interest in avoiding the visual clutter that would be created by a multiplicity of flashing signs is likewise substantial enough to justify avoiding the sort of proliferation that LaTour's activity would invite. *See Taxpayers for Vincent*, 466 U.S. at 816-17 (upholding prohibition of posting signs on public property based on interest in avoiding visual clutter). I thus conclude that Fayetteville's decision to create only a *de minimis* exemption for flashing time-and-temperature signs is justified by the city's substantial interests in aesthetics and traffic safety, and without reference to the content of the regulated speech. *Cf. also Rappa v. New Castle County*, 18 F.3d

---

[5]With respect to LaTour's evidentiary point on appeal, I conclude that the district court did not abuse its discretion. At a pretrial hearing held on May 7, 2003, La Tour proposed to introduce evidence of flashing devices at the Washington County Fair, at the University of Arkansas football stadium, at a traveling carnival staged at a local fairgrounds, and inside the Fayetteville police station. The district court held that it would not be appropriate to "hold a trial within a trial" to determine whether these flashing lights would violate the ordinance. Given LaTour's failure to raise the issues until the week before trial, after discovery had closed, the court ruled that "to get into that now is basically fundamentally unfair," and that "to bring in a myriad of other potential examples at the last moment . . . would unduly complicate the trial, unduly extend it, and that it would tend to, rather than clarify the matter, simply to confuse it further." (Tr. at 63-65). This ruling was a sound application of Federal Rule of Evidence 403.

1043, 1079-80 (3d Cir. 1994) (Alito, J., concurring) (suggesting that where state and county enacted a general ban on outdoor signs, content-based exceptions that were "truly *de minimis*" did not violate the First Amendment).

The city's exemption for time-and-temperature signs without advertising matter does not offend the First Amendment principles with which scrutiny of underinclusive regulation of speech is typically concerned. The city's approach does not "attempt to give one side of a debatable public question an advantage in expressing its views to the people," and it does not "seek to select the permissible subjects for public debate and thereby to control the search for political truth." *Gilleo*, 512 U.S. at 51 (internal quotations and ellipses omitted). The exemption does not undermine the credibility of the city's stated reasons for prohibiting all other flashing and blinking signs. *Id*. at 52. It merely allows the display of a traditional, alternating public service message that poses a negligible threat to the interests that justify the general ban. The regulatory approach is narrowly tailored to serve a significant government interest, and it leaves open ample alternative channels for communication. I do not believe the First and Fourteenth Amendments require Fayetteville to choose between either banning time-and-temperature signs or allowing unlimited flashing and blinking signs throughout the city. I therefore concur in the judgment affirming the district court.

HANSEN, Circuit Judge, dissenting.

Because I believe that the City's determination that Mr. LaTour's sign violated the City's sign ordinance was based solely on the message displayed on his sign, the district court should have applied strict scrutiny analysis. Accordingly, I would reverse and remand the case for reconsideration using that test.

The ordinance itself bans all flashing and blinking signs of any kind, regardless of the content they display. Mr. LaTour was prosecuted because his flashing sign displayed content other than the time and temperature. The owners of other flashing

-10-

signs (which the parties agree operate -- that is the signs flash or blink -- in the very same way that Mr. LaTour's sign does) but which display the time and temperature were not and are not prosecuted, nor are their signs ordered to be removed. The application by the City of its ordinance is, therefor, not accomplished in a content neutral way, because the message on the sign's display (time and temperature versus something else) is what determines whether or not the sign will be permitted to be used and whether or not its owner will be criminally prosecuted. That the City's enforcement of its ordinance is content-based is further confirmed by our court's statement of the facts, ante at 2, that "[a]fter LaTour used the sign to display political messages, City officials ordered him to remove the sign...."

A ban on all flashing or blinking signs because of a desire to promote traffic safety and aesthetics would be content-neutral under our prior case of Excalibur Group Inc. v. City of Minneapolis, 116 F.3d 1216 (8th Cir. 1997), simply because it is "justified without reference to the content of the regulated speech." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). But a city's policy of allowing some blinking or flashing signs to display as content the time and temperature, but prohibiting other blinking or flashing signs that display different content (e.g., "Dow Up 16" or, as Mr. LaTour's sign said, "Choose Life") can only be based upon or enforced by specific reference to the regulated speech, as opposed to observing only its method of display.

In City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410 (1993), Cincinnati applied an ordinance against handbill distribution to prohibit freestanding newsracks on public property that contained commercial handbills, but allowed similar newsracks that contained newspapers. The city claimed its regulation was content-neutral because its justifications for the regulation -- safety and aesthetics -- were unrelated to the content of the prohibited handbills. The Supreme Court rejected the argument because "the very basis for the regulation is the difference in content between ordinary newspapers and commercial speech." Id. at 49. The Court noted

that it had "expressly rejected the argument that discriminatory treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas." Id. (internal citations and quotations omitted). Because "whether any particular newsrack [fell] within the ban [was] determined by the content of the publication resting inside the newsrack," the ban was content-based "by any commonsense understanding of the term." Id.

Likewise here. Whether any particular blinking sign is ordered removed or its owner prosecuted is determined by the content of the message exhibited on the sign. The city's decision to enforce its ban against some blinking signs and not others is determined solely by the message the sign displays. Benign time and temperature messages are permitted; all others, benign or biased, are not. Such an enforcement policy is surely content-based by a "commonsense understanding of the term," because it is only after considering the content displayed that the city decides to act against a particular sign.

Because I believe the district court should take the first cut at determining whether or not the ordinance as applied passes strict scrutiny, I would reverse its judgment and remand the case for further consideration. Accordingly, I respectfully dissent.

_____