Merrimack
No. 2006-362

CARLSON'S CHRYSLER

v.

CITY OF CONCORD

Argued: April 3, 2007
Opinion Issued: November 8, 2007

*McNeill, Taylor and Gallo, P.A.*, of Dover (*Stephen H. Roberts* on the brief and orally), for the plaintiff.

*Paul F. Cavanaugh*, city solicitor, of Concord, by brief and orally, for the defendant.

BRODERICK, C.J. The defendant, City of Concord (City), appeals a ruling by the Superior Court (*McGuire*, J.) that a portion of the City's zoning ordinance regulating electronic changeable copy signs is unconstitutional. We reverse.

The plaintiff, Carlson's Chrysler (Carlson's), owns and operates an automobile dealership in Concord. In 2005, Carlson's submitted an application to the City to erect an electronic changeable copy sign on its property to replace an existing manual changeable sign. The proposed sign would electronically display messages advertising Carlson's vehicle inventory. The City's code administrator denied the application based upon a section of the sign ordinance that prohibits "[s]igns which move or create an illusion of movement except those parts which solely indicate date, time, or temperature." CONCORD, N.H., ZONING ORDINANCE art. 28-6-7 (2001). Carlson's appealed to the Concord Zoning Board of Adjustment

(ZBA), which, after a public hearing, upheld the decision of the code administrator. Carlson's appealed the ZBA's decision to the superior court, which held that the City's ordinance violated the First Amendment to the United States Constitution as an unlawful infringement upon commercial speech.

The City appeals, arguing that the trial court erred: (1) in finding that the zoning ordinance constituted an unconstitutional infringement upon commercial speech; (2) by applying the wrong standard of review when it found no evidence that regulating electronic signs will promote public safety or aesthetics; and (3) in finding that there are less intrusive methods the City could use to achieve its goals.

Concord's zoning ordinance contains detailed regulations governing signs. The purposes of the sign regulations are to:

> (a) Encourage the effective use of signs as a means of communication in the City of Concord; (b) Maintain and enhance the appearance and aesthetic environment of the City, particularly in downtown Concord and Penacook, and along the highway corridors leading into the City; (c) Retain the City's ability to attract and encourage economic development and growth; (d) Improve pedestrian and traffic safety; (e) Minimize potential adverse effects of signs on nearby public and private property; and (f) Enable fair and consistent enforcement of these sign regulations.

CONCORD, N.H., ZONING ORDINANCE art. 28-6-1 (2000). At the time of Carlson's application for a sign permit, article 28-6-7 of the ordinance prohibited "(a) Signs which move or create an illusion of movement except those parts which solely indicate date, time, or temperature" and "(h) Signs which appear animated or projected, or which are intermittently illuminated or of a traveling, tracing, or sequential light type, or signs which contain or are illuminated by animated or flashing light, except such portions of a sign as consist solely of indicators of time, date, and temperature." *Id.* art. 28-6-7(a), (h).

Following the trial court's decision, the City amended its zoning ordinance to prohibit all electronic message centers, including those indicating time, date and temperature. The constitutionality of the amended statute was challenged in the United States District Court for the District of New Hampshire, where the district court held that the amended statute is content-neutral and constitutes a lawful time, place and manner restriction upon commercial speech in compliance with the test in *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). *See Naser*

*Jewelers, Inc. v. City of Concord*, 2007 WL 1847307, at \*3-4 (D.N.H. June 25, 2007). The district court's decision is not at issue in this appeal.

■ The First Amendment to the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. CONST. amend. I. The Fourteenth Amendment makes this limitation applicable to the States, *see Gitlow v. New York*, 268 U.S. 652, 666 (1925), and to their political subdivisions, *see Lovell v. Griffin*, 303 U.S. 444, 450 (1938).

> While signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.

*City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994). Signs, "like other media of communication, combine communicative and noncommunicative aspects." *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 502 (1981). "As with other media, the government has legitimate interests in controlling the noncommunicative aspects of the medium, but the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects." *Id.* (citation omitted). "Because regulation of the noncommunicative aspects of a medium often impinges to some degree on the communicative aspects, it has been necessary for the courts to reconcile the government's regulatory interests with the individuals' right to expression." *Id.*

■ Commercial speech is defined as "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 561 (1980). The Constitution "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Id.* at 563. "The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." *Id.* In *Central Hudson*, the Supreme Court adopted a four-part test for determining the validity of government restrictions on commercial speech. Under this test, courts consider: (1) whether the advertising is neither unlawful nor misleading and therefore entitled to First Amendment protection; (2) whether the ordinance seeks to implement a substantial governmental interest; (3) whether the ordinance directly advances that interest; and (4) whether the ordinance reaches no further than necessary to accomplish its stated goals. *Id.* at 566.

The trial court found that the commercial speech proposed to be displayed by Carlson's is neither unlawful nor misleading and therefore is entitled to First Amendment protection. However, the court also found that although the City's concerns for public safety and aesthetics are "substantial governmental goals" that satisfy the second prong of the *Central Hudson* test, the City failed to meet its burden of proving that the ordinances advance its asserted interests and reach no further than necessary because the City presented no evidence that regulating the content of electronic display signs will promote aesthetics or public safety.

Regarding aesthetics, the trial court stated that

> the ZBA expressed many concerns that numerous signs in a small area might lead to visual clutter or otherwise be unsightly. However, the City's ban on electronic display signs does not take into account the character of the area in which a sign is proposed to be placed or the size of the sign or its lettering. For example, the Court can take judicial notice that the sign proposed in this case will be situated among many other commercial entities with large, lit advertising signs of their own. It is difficult to imagine that electronic display signs in this area will have an aesthetically negative effect.

Regarding public safety, the trial court stated that "the City contends that the changing displays of the proposed sign might be distracting to motorists and lead to increased traffic accidents. While this may have a common sense appeal, no evidence was presented to support such a concern."

We disagree with the trial court's analysis. In *Metromedia*, the United States Supreme Court considered the validity of an ordinance in the city of San Diego which banned offsite commercial billboards while allowing onsite commercial billboards. *Metromedia*, 453 U.S. at 495-96. It was asserted that the record in that case was inadequate to show any connection between billboards and traffic safety and that the City had therefore failed to prove that the ordinance directly advanced governmental interests in traffic safety. *Id.* at 508. The Supreme Court recognized that the California Supreme Court had held "as a matter of law that an ordinance which eliminates billboards designed to be viewed from streets and highways reasonably relates to highway safety." *Id.* As the Court stated, "[n]oting that billboards are intended to, and undoubtedly do, divert a driver's attention from the roadway . . . the California Supreme Court agreed with many other courts that a legislative judgment that billboards are traffic hazards is not manifestly unreasonable and should

not be set aside." *Id.* at 508-09 (quotations and citations omitted). The Supreme Court "likewise hesitate[d] to disagree with the accumulated, commonsense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety. There is nothing to suggest that these judgments are unreasonable." *Id.* at 509.

The Court reached a similar conclusion regarding advancement of the city's "esthetic interests." *Id.* at 510. As the Court stated:

> It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an "esthetic harm." San Diego, like many States and other municipalities, has chosen to minimize the presence of such structures. Such esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose. But there is no claim in this case that San Diego has as an ulterior motive the suppression of speech, and the judgment involved here is not so unusual as to raise suspicions in itself.

*Id.*; *see also Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001) (speech restrictions may be justified based solely on history, consensus, and simple common sense); *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806-07 (1984) (municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression).

"[Z]oning is a legislative function, and judging the wisdom of the legislation is not the function of this court." *Taylor v. Town of Plaistow*, 152 N.H. 142, 145 (2005). "The State zoning enabling act grants municipalities broad authority to pass zoning ordinances for the health, safety, morals and general welfare of the community." *Id.* "In enacting a zoning regulation, a town may consider the knowledge of town selectmen and planning board members concerning such factors as traffic conditions and surrounding uses resulting from their familiarity with the area involved." *Id.* "Furthermore, a municipality may exercise its zoning power solely to advance aesthetic values because the preservation or enhancement of the visual environment may promote the general welfare." *Id.*

■ The City "need not provide detailed proof that the regulation advances its purported interests of safety and aesthetics," *Center for Bio-Ethical v. City and County of Hono.*, 455 F.3d 910, 922 (9th Cir. 2006), and we hold that the trial court erred in substituting its judgment for that of

the City that prohibiting animated, flashing signs containing commercial advertising will "enhance the appearance and aesthetic environment of the City" and "improve traffic safety." Such a determination is not "manifestly unreasonable and should not be set aside." *Metromedia*, 453 U.S. at 509.

Finally, with respect to the fourth prong of the *Central Hudson* test, the trial court found that "the City has available other, more narrowly tailored means to meet its desired objectives. To protect its interests, the City could regulate the number, proximity or placement of electronic display signs or it could ban all types of electronic signs, including those displaying time, date and temperature." We disagree that the City, by prohibiting all electronic signs displaying commercial speech, has drawn an ordinance broader than necessary to meet and advance its substantial interests of traffic safety and aesthetics. The most effective way to eliminate the problems raised by electronic signs containing commercial advertising is to prohibit them. *See Metromedia*, 453 U.S. at 508. The City continues to allow other means of commercial advertising of a non-electronic nature.

We do not consider whether the challenged ordinance unfairly distinguishes among various types of non-commercial speech as Carlson has not advanced that argument.

*Reversed.*

DALIANIS and HICKS, JJ., concurred; DUGGAN, J., concurred specially.

DUGGAN, J., concurring specially. I agree with the court's opinion but write separately to make two points.

First, whether the test articulated in *Central Hudson Gas v. Public Service Commission of New York*, 447 U.S. 557 (1980), which applies when an ordinance regulates only commercial speech, applies to this ordinance is debatable. The ordinance does not restrict only commercial speech, and instead applies equally to all "[s]igns which move or create an illusion of movement except those parts which solely indicate date, time, or temperature." CONCORD, N.H. ZONING ORDINANCE art. 28-6-7 (2001). As such, both commercial and non-commercial signs are prohibited under the ordinance. *See La Tour v. City of Fayetteville, Ark.*, 442 F.3d 1094, 1096-97 (8th Cir. 2006) (treating sign regulation with exception permitting messages displaying time and/or temperature as applicable to both commercial and non-commercial speech).

For this type of ordinance, which does not on its face distinguish between commercial and non-commercial speech, a significant number of courts have found that the *Central Hudson* test does not apply. *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1268-69 n.5 (11th

Cir. 2005) (where city code regulated all signs, including appellant's electronic message sign, without distinguishing between signs bearing commercial and noncommercial messages, "the *Central Hudson* test has no application"); *Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 386 (6th Cir. 1996) (where City argued that ordinance regulating placement and size of signs in residential neighborhoods should be analyzed under *Central Hudson*, court found issue moot, but concluded "that use of the commercial speech test would be inappropriate"); *Moser v. F.C.C.*, 46 F.3d 970, 973 (9th Cir. 1995) (where statute regulating automated telemarketing calls did not distinguish between commercial and non-commercial speech, *Central Hudson* test not applicable); *XXL of Ohio, Inc. v. City of Broadview Heights*, 341 F. Supp. 2d 765, 783 (N.D. Ohio 2004) (*Central Hudson* does not apply if ordinance restricts both commercial and non-commercial signs and, instead, "more stringent 'time, place, and manner' test ... is used"); *cf. Naser Jewelers, Inc. v. City of Concord, N.H.*, 2007 WL 1847307, at *2, 4 (D.N.H. June 25, 2007) (applying time, place, and manner test to amended Concord ordinance prohibiting, *inter alia*, all "electronic message center type signs," and finding ordinance is likely constitutional).

On appeal, neither party has briefed the applicability of a test other than *Central Hudson*. Accordingly, I agree with the majority that, for the purposes of this appeal, we should analyze the First Amendment issues using the *Central Hudson* framework.

Second, the superior court relied in part on the exception for time, date and temperature in holding that the ordinance is unconstitutional. On appeal, the parties in their briefs and at oral argument discussed the effect of this exception on the analysis.

The four-prong *Central Hudson* test requires courts to consider: (1) whether the advertising is neither unlawful nor misleading and is therefore entitled to First Amendment protection; (2) whether the ordinance seeks to implement a substantial governmental interest; (3) whether the ordinance directly advances that interest; and (4) whether the ordinance reaches no further than necessary to accomplish its stated goals. *Central Hudson*, 447 U.S. at 566. In my view, *Central Hudson* requires us to account for the exception for time, date and temperature. *See Flying J Travel Plaza v. Com.*, 928 S.W.2d 344, 348-49 (Ky. 1996) (analyzing whether sign regulation's exception for time, date and temperature directly advances governmental interest). This exception in the ordinance makes the analysis under *Central Hudson* a closer question, but I would nonetheless conclude that the time, date and temperature exception also directly and materially advances the City's interests and reaches no further than necessary to accomplish its stated goals. Because a message

displaying time, date and temperature is short and rudimentary, the City could have reasonably found that such a message is less distracting and thus poses less of a traffic hazard than other messages. *See Fayetteville*, 442 F.3d At 1097. Such determination by the City is not "manifestly unreasonable and should not be set aside." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 509 (1981).