# United States Court of Appeals
## For the First Circuit

No. 07-2098

NASER JEWELERS, INC.,

Plaintiff, Appellant,

v.

CITY OF CONCORD, NEW HAMPSHIRE,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

John F. Winston with whom Stephen H. Roberts, McNeill, Taylor & Gallo, and Winston & Bragg were on brief for appellant.
Lisa M. Lee with whom Charles P. Bauer, John T. Alexander, and Ransmeier & Spellman were on brief for appellee.
John M. Baker, Robin M. Wolpert, Kathryn M.N. Hibbard, and Green Espel, P.L.L.P. were on brief for American Planning Association, Northern New England Chapter of the American Planning Association, International Municipal Lawyers Association, New Hampshire Municipal Lawyers Association, and New Hampshire Planners Association, amici curiae.
William D. Brinton and Rogers Towers were on brief for Scenic America, Inc., amicus curiae.

January 18, 2008

**LYNCH**, **Circuit Judge**. The city of Concord, New Hampshire, enacted an ordinance prohibiting all Electronic Messaging Centers ("EMCs"), which the city found were detrimental to traffic safety and community aesthetics. EMCs are signs which display electronically changeable messages (as opposed to signs with static or manually changeable messages) and so display illuminated text that can change frequently, for instance by scrolling or flashing. Naser Jewelers, Inc. ("NJI"), a Concord business, sought and was denied a preliminary injunction against the enforcement of the ordinance on grounds of facial unconstitutionality under the First Amendment.

Concord's ban on all EMCs is content-neutral. Globe Newspaper Co. v. Beacon Hill Architectural Comm'n, 100 F.3d 175, 183 (1st Cir. 1996). As a result, the ordinance is permissible if it is narrowly tailored to serve a significant governmental interest and leaves open alternative channels of communication. An ordinance is narrowly tailored if it does not burden substantially more speech than necessary to further the government's legitimate interests. Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989). The ordinance need not be the least restrictive means to serve those interests. Id. at 798; Hill v. Colorado, 530 U.S. 703, 726 (2000); Globe Newspaper, 100 F.3d at 188. Concord's ordinance meets these criteria and we affirm.

I.

Concord has enacted sign ordinances as part of its municipal code. The stated purposes of these ordinances are, among other things, to "[m]aintain and enhance the appearance and aesthetic environment of the City" and to "[i]mprove pedestrian and traffic safety." Concord, N.H., Code of Ordinances § 28-6-1(b) & (d) (2007).

Before 2006, Concord's sign ordinances contained prohibitions on EMCs, but provided exceptions for EMCs which displayed solely time, date, and temperature indicators. In 2005, a New Hampshire Superior Court judge ruled that the regulations violated the First Amendment because they favored signs that displayed time, date, or temperature. That erroneous ruling has since been overruled by the New Hampshire Supreme Court. Carlson's Chrysler v. City of Concord, 2007 WL 3306945, at *1 (N.H. Nov. 8, 2007).

In light of the interim Superior Court ruling, Concord amended its ordinances in August 2006 to prohibit all EMCs, including ones indicating only time, date, or temperature. The city's current ordinance, challenged here, prohibits all signs that "appear animated or projected" or "are intermittently or intensely illuminated or of a traveling, tracing, scrolling, or sequential light type" or "contain or are illuminated by animated or flashing light." Concord, N.H., Code of Ordinances § 28-6-7(h) (2007).

-3-

On October 3, 2006, NJI sought permission to construct and operate an EMC on the premises of its retail store in Concord. The sign would be located on Loudon Road, a high-traffic corridor that includes a mix of retail and residential development and a large public park and fire station. The location is in close proximity to an elementary school and more residential neighborhoods. The store's current sign is a freestanding sign six feet off the ground that features a model of a large gold ring with a polished diamond and text reading "Joseph Michaels Diamonds." (Joseph Michaels Diamonds is a trade name used by NJI.) The proposed EMC would be located directly underneath the current sign and would measure 2.7 feet by 5.3 feet.

NJI is eager to install an EMC at its store in Concord because of its experience with an EMC at another retail location in Dover, New Hampshire. NJI had earlier installed an EMC at its Dover store. Originally, NJI changed the copy on its EMC only once every ten minutes. Early in 2006, NJI began changing the text once every four to five seconds. NJI claims to have experienced a sizable increase in sales, some eighteen percent, as a result of these more frequent copy changes.

On October 13, Concord's code administrator denied NJI's application because the proposed EMC would violate Concord's regulations. On October 25, NJI sought declaratory and injunctive relief and damages in federal district court, claiming that

Concord's regulations impermissibly infringed its First Amendment rights. NJI also sought a preliminary injunction to allow it to install an EMC in time for the holiday shopping season.

A magistrate judge denied NJI's request for a preliminary injunction on November 22, 2006. The district court denied the injunction on different analytical grounds on June 25, 2007. The district court held inapplicable the commercial speech test in Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557 (1980), on which the magistrate judge had relied, because the EMC ban is content-neutral and does not apply merely to commercial entities.[1] Rather, the district court upheld the ordinance under the rule that content-neutral regulations are constitutional provided that they are narrowly tailored to serve a significant governmental interest and allow for reasonable alternative channels of communication. See, e.g., Gun Owners' Action League, Inc. v. Swift, 284 F.3d 198, 212 (1st Cir. 2002).

---

[1] The commercial speech framework is "substantially similar" to the test for time, place, and manner restrictions. Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 554 (2001) (quoting Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 477 (1989)) (internal quotation marks omitted). Specifically, the Central Hudson inquiry considers whether the asserted governmental interest in the regulation is substantial, whether the regulation directly advances that asserted interest, and whether the regulation is not more extensive than necessary to serve that interest. Central Hudson, 447 U.S. at 566.

Central Hudson, in turn, was narrowed in City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 416 (1993), where the Court held that it was the city's burden to establish a "reasonable fit" between its asserted interests and its regulation.

The district court concluded that NJI had not shown that it was likely to succeed on the merits and therefore was not entitled to a preliminary injunction.  This timely appeal followed.

II.

Appellate review of the denial of a preliminary injunction is for abuse of discretion.  Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005).  The district court correctly noted the four factors considered in determining whether a preliminary injunction ought to issue: "1) a likelihood of success on the merits, 2) irreparable harm to the plaintiff should preliminary relief not be granted, 3) whether the harm to the defendant from granting the preliminary relief exceeds the harm to the plaintiff from denying it, and 4) the effect of the preliminary injunction on the public interest."  Id. at 75.

We consider whether NJI has demonstrated a probability of success on the merits.  When considering First Amendment claims, we engage in de novo review of the district court's conclusions of law and mixed questions of law and fact.  Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 567 (1995); Sullivan v. Town of Augusta, ___ F.3d ___, 2007 WL 4357565, at *5 (1st Cir. Dec. 14, 2007).

Billboards and other signs are protected by the First Amendment, but courts have long approved subjecting them to the police powers of local government.  Prime Media, Inc. v. City of

-6-

Brentwood, 398 F.3d 814, 818 (6th Cir. 2005).  As the Supreme Court has noted, "signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.  It is common ground that governments may regulate the physical characteristics of signs . . . ."  City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994).

A threshold question in cases involving challenges to government restrictions on speech is whether the restriction at issue is content-neutral or, to the contrary, is content-based.  See, e.g., Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994); Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 736 (1st Cir. 1995); see also K. Sullivan & G. Gunther, First Amendment Law 193 (1999).  In Globe Newspaper, this court held that the "principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."  100 F.3d at 183 (quoting Nat'l Amusements, 43 F.3d at 737) (internal quotation marks omitted).  Furthermore, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."  Id. (quoting Ward, 491 U.S. at 791) (internal quotation marks omitted).

As the district court correctly noted, Concord's prohibition on EMCs does not discriminate based on content.  EMCs

might communicate any number of messages -- from a business advertising a sale to a high school congratulating its victorious teams -- and all EMCs are similarly prohibited.

NJI insists that Concord's regulation is content-based because city officials gave preference to time, date, and temperature messages in its prior ordinance. They assert Concord is using the current regulation as a stopgap measure, with plans to reinstate the original prohibition -- with exceptions for time, date, and temperature displays -- following the state Supreme Court's decision. This argument goes nowhere. The regulation currently in place, which is the only one before us, contains no exceptions. Concord's regulation is properly analyzed as a content-neutral restriction on speech.

NJI argues that the city bears the burden of proof on all issues. The district court accepted this argument, at least on the ultimate question of the statute's constitutionality, citing to Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 666 (2004). Ashcroft, however, involved a challenge to a content-based speech restriction. See id. at 665. Content-based regulations are presumed to be unconstitutional and the government bears a heavy burden of justification. R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992); McGuire v. Reilly, 260 F.3d 36, 43 (1st Cir. 2001).

Here, plaintiff has brought a facial attack on a content-neutral ordinance. In a facial attack case, it is plaintiff's

-8-

burden to show that the law has no constitutional application. See, e.g., Gonzales v. Carhart, ___ U.S. ___, 127 S. Ct. 1610, 1639 (2007); N.Y. State Club Ass'n v. City of New York, 487 U.S. 1, 11 (1988); McGuire, 260 F.3d at 47.

The Supreme Court has said that when the government "seeks to restrict speech based on its content" that "the usual presumption of constitutionality afforded [legislative] enactments is reversed." United States v. Playboy Entm't Group, 529 U.S. 803, 817 (2000). The implication is that content-neutral statutes continue to enjoy a presumption of constitutionality.

The Supreme Court's most recent case on content-neutral regulations is Hill v. Colorado. Neither Hill nor Ward v. Rock Against Racism explicitly speaks to burdens of proof on the different portions of the test used to assess content-neutral regulations. But there is other law saying, in content-neutral regulation cases, but often citing to content-based cases, that the government must show that it has met the element, within the larger test, that the regulation is narrowly tailored. See, e.g., Turner Broad., 512 U.S. at 665; Casey v. City of Newport, 308 F.3d 106, 111 (1st Cir. 2002).

We need not resolve here the intricacies of burdens of proof and production. For our purposes, and indeed in many First Amendment cases of content-neutral regulations, the issue of who has the burden of proof will not be important. After all, the

government's purpose for the regulation is often expressly stated, as are the reasons for that choice and not others, thus removing those issues from having to be proven. In this case, no matter who has the burden as to which elements of the test, plaintiff's claim fails.

NJI also argues that it is does not matter whether Concord's regulations are content-neutral or content-based because "the targeted speech is primarily commercial" and Central Hudson applies to all restrictions involving commercial speech. This is simply incorrect. Central Hudson serves as an alternative to the more exacting standards applied to content-based restrictions on non-commercial speech. See Central Hudson, 447 U.S. at 562-63; Sullivan & Gunther, supra, at 163, 177-78. The standards for content-neutral restrictions do not vary by whether the plaintiff is exercising commercial speech. The uniform case law on restrictions on signs is clear on this point. See, e.g., Prime Media, 398 F.3d at 819-22 (evaluating content-neutral restrictions on billboards using narrow tailoring analysis); Messer v. City of Douglasville, 975 F.2d 1505, 1509-11 (11th Cir. 1992) (same).

Content-neutral regulations are permissible so long as they are narrowly tailored to serve a significant governmental interest and allow for reasonable alternative channels of communication. The narrow tailoring test is a form of intermediate scrutiny. "[R]egulations that are unrelated to the content of

-10-

speech are subject to an intermediate level of scrutiny . . . ." Turner Broad., 512 U.S. at 642; see also Sullivan, 2007 WL 4357565, at *12 (same); Sullivan & Gunther, supra, at 199 (same).

Concord's ordinance satisfies the requirements for constitutionality. The ordinance is a content-neutral regulation, it serves substantial governmental interests, it is narrowly tailored, and it leaves open reasonable alternative channels of communication.

A.          Governmental Interests

From the face of Concord's sign regulations, the city's stated goals include promoting both traffic safety and community aesthetics. If a regulation is content-neutral on its face and states its purposes, we look to the legislative body's statement of intent. "We will not look behind th[e] express statement of intent as to a law neutral on its face." Torres Rivera v. Calderón Serra, 412 F.3d 205, 211 (1st Cir. 2005). It is problematic to permit a plaintiff, in a content-neutral case, to attempt to prove that there is an intent apart from this express statement because "the legislature's subjective intent is both unknown and unknowable." McGuire, 260 F.3d at 47. Because Concord's regulations are content-neutral on their face, it was an empty exercise for plaintiff to have conducted examinations of Concord's mayor or code enforcement officer in an effort to show the stated reasons for the ordinance were not the real reasons. Legislative history is

-11-

permissible for other purposes, but not this. See, e.g., McGuire, 260 F.3d at 48 (considering legislative history in determining whether a statute was narrowly tailored).

Both traffic safety and community aesthetics have long been recognized to constitute significant governmental interests. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 507-08 (1981) (plurality opinion) (collecting cases and concluding that there can be no "substantial doubt that the twin goals that the ordinance seeks to further -- traffic safety and the appearance of the city -- are substantial governmental goals"); see also, e.g., City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 425 (1993) (acknowledging city's legitimate interest in the aesthetics of its sidewalks); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 807 (1984) ("[T]he visual assault on the citizens of Los Angeles . . . constitutes a significant substantive evil within the City's power to prohibit."). Concord's stated justifications plainly constitute significant governmental interests.

B.        Narrow Tailoring, but Not Least Restrictive Means

NJI argues that the ordinance is not narrowly tailored. In determining whether a provision is narrowly tailored, courts apply the test articulated in Ward v. Rock Against Racism and reiterated by the Supreme Court in Hill v. Colorado. Under Ward, "the requirement of narrow tailoring is satisfied 'so long as the

-12-

. . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" 491 U.S. at 799 (quoting United States v. Albertini, 472 U.S. 675, 689 (1985)). "[T]his standard does not mean that a . . . regulation may burden substantially more speech than is necessary to further the government's legitimate interests." Id. Concord, however, is not required to choose the least restrictive means possible: "[T]he regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. at 800.

Concord's interests in traffic safety and community aesthetics would be achieved less effectively without the ordinance's prohibition on EMCs. We give some respect to "the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety." Metromedia, 453 U.S. at 509 (plurality opinion). It is given that a billboard can constitute a traffic hazard. It follows that EMCs, which provide more visual stimuli than traditional signs, logically will be more distracting and more hazardous. See Chapin Furniture Outlet, Inc. v. Town of Chapin, 2006 WL 2711851, at *4 (D.S.C. Sept. 20, 2006), vacated on other grounds by Chapin Furniture Outlet, Inc. v. Town of Chapin, 2007 WL 3193854 (4th Cir. Oct. 30, 2007) (holding, in the context of EMC regulations, that "the Town's judgment that flashing or scrolling

-13-

signs constitute a traffic hazard . . . is not unreasonable"). Indeed, plaintiff's own witness stated that bypassers focus more on rapidly blinking electronic signs than static signs. This constitutes a greater hazard. Further, for drivers a flashing light is often a signal of hazard on the roadway, a signal which itself slows and disrupts the traffic flow.

NJI argues that Concord must perform studies to prove that the ban on EMCs in fact supports its stated interests. Concord was under no obligation to do such studies or put them into evidence. Justice Brennan suggested the need for such evidence in his concurring opinion in Metromedia, but seven justices rejected his position. Metromedia, 453 U.S. at 521, 528 (Brennan, J., concurring); see also Outdoor Sys. Inc. v. City of Lexana, 67 F. Supp. 2d 1231, 1238 (D. Kan. 1999) ("Relying on Justice Brennan's concurring opinion in Metromedia, plaintiff claims that the City has the burden to come forward with evidence which demonstrates that billboards actually impair traffic safety and the beauty of the environment. Plaintiff ignores the fact that seven Justices rejected Justice Brennan's analysis in this regard.").

As noted in Ackerly Communications of the Northwest Inc. v. Krochalis, 108 F.3d 1095, 1099-1100 (9th Cir. 1997), "[a]s a matter of law Seattle's ordinance, enacted to further the city's interests in esthetics and safety, is a constitutional restriction on commercial speech without detailed proof that the billboard

-14-

regulation will in fact advance the city's interests." Similarly, the Sixth Circuit observed in rejecting the argument that a city needed to produce evidence to justify its regulation on billboard size: "To ask the City to justify a size restriction of 120 square feet over, say, 200 square feet or 300 square feet would impose great costs on local governments . . . ." Prime Media, 398 F.3d at 823-24.

Courts have "repeatedly deferred to the aesthetic judgments of municipalities and other government bodies when evaluating restrictions on protected expression." Globe Newspaper, 100 F.3d at 190 (quoting Gold Coast Pub'ns, Inc. v. Corrigan, 42 F.3d 1336, 1346 (11th Cir. 1994)) (internal quotation mark omitted). Although courts do not wholly defer to legislative judgments, see id., there is no basis to doubt that Concord's aesthetic concern -- "not rendering [its] visual image and community character to be that of a potential Times Square" -- would be achieved far less effectively absent a ban on EMCs.

Concord's ordinance also does not burden substantially more speech than necessary. NJI argues that because Concord's City Council considered but rejected alternatives to a complete ban on EMCs, the ban necessarily burdens too much speech because there are alternatives. However, the government is not required to choose the least restrictive approach in content-neutral regulation. In Globe Newspaper, this court held that a regulation banning

newspaper distribution boxes from the public streets of Boston's historic Beacon Hill district passed constitutional muster. 100 F.3d at 195. The opinion noted that although less restrictive alternatives existed, the regulating commission was not required to adopt them if they would serve its interests less effectively. Id. at 189-90. NJI, to its credit, concedes this is the rule of Globe Newspaper, but asks us to overrule the case. Not only do we, as a panel, lack the power to do so, Irving v. United States, 162 F.3d 154, 160 (1st Cir. 1998), but we would not, even if we could, for the rule is correct.

Here, the city argues that NJI's proposed less restrictive alternatives were problematic and it was not required to accept them. Ironically, NJI argues less than a total ban would be a less restrictive alternative. The city had tried such an ordinance -- an EMC ban allowing only time, date, and temperature displays -- before and was met with a lawsuit. The alternative of allowing EMCs but imposing certain conditions on them, such as limiting the number of times per day a message could change, would have created steep monitoring costs and other complications for the city. There is evidence in the record, permissible on this issue, that the city explicitly considered and rejected alternatives, and the reasons for its choice. See McGuire, 260 F.3d at 49. Concord's concerns about the proposed alternatives to its present EMC ordinance are legitimate.

NJI makes a separate argument that Concord's ordinance is forbidden because it is a ban of an entire medium of communication. Factually the argument raises the issue of how one defines "medium." Legally, the principle is untenable here.[2] Billboards and signs are not banned, nor is the use of signs with manually changeable type. Even if EMCs are considered to be a particular "medium," the fact that a regulation bans a particular medium does not mean that the ordinance is not narrowly tailored. Globe Newspaper, 100 F.3d at 191-92. When the medium itself is the "evil the city [seeks] to address," then a ban of that entire medium is narrowly tailored. Id. at 192 (citing Vincent, 466 U.S. at 810).

As the Supreme Court observed in Metromedia, "If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." 453 U.S. at 508 (plurality opinion).

C.　　　Alternative Channels

Concord has not foreclosed NJI from using other means of communication. As the district court pointed out, NJI can still use static and manually changeable signs. It can also place advertisements in newspapers and magazines and on television and

---

[2]　This case does not raise the concerns noted in Globe Newspaper about entire medium bans involving the exercise of speech by an individual or a medium that constitutes a "uniquely valuable mode of expression." 100 F.3d at 192 (citing Ladue, 512 U.S. at 54-55).

-17-

the Internet, distribute flyers, circulate direct mailings, and engage in cross-promotions with other retailers. See, e.g., Sullivan, 2007 WL 4357565, at *22 (holding that the use of sidewalks, gatherings on state land, hand-held banners, leafleting, vehicular processions, and smaller-scale outdoor gatherings constituted sufficient alternatives for people unable to afford a city's parade permit); La Tour v. City of Fayetteville, 442 F.3d 1094, 1097 (8th Cir. 2006) (concluding that an ordinance prohibiting flashing or blinking electronic signs left open sufficient alternative channels of communication, including using non-electronic signs); Globe Newspaper, 100 F.3d at 193 (concluding that street vendors were an adequate alternative to on-street newspaper boxes); Chapin Furniture Outlet, 2006 WL 2711851, at *4 (holding that an ordinance banning EMCs "does not prevent [p]laintiff from displaying any message . . . on a sign not prohibited" and noting that plaintiff could use banners, flags, sandwich boards, and inflatable signs as alternatives to EMCs).

NJI argues that it is losing potential customers, and therefore profit, because of its inability to place an EMC at its Concord location. The maximizing of profit is not the animating concern of the First Amendment. The fact that restrictions prohibit a form of speech attractive to plaintiff does not mean that no reasonable alternative channels of communication are available. "The First Amendment does not guarantee a right to the

-18-

most cost-effective means of [speech] . . . ." <u>Globe Newspaper</u>, 100 F.3d at 193. Indeed, we have "upheld . . . alternative means of communication despite diminution in the quantity of speech, a ban on a preferred method of communication, and a reduction in the potential audience." <u>Sullivan</u>, 2007 WL 4357565, at *22.

Concord's prohibition of EMCs is a constitutionally permissible content-neutral regulation. Since NJI has no probability of success on the merits of its claim, we need not address the other factors in the preliminary injunction determination.

The judgment of the district court is affirmed. Costs are awarded to defendants.