SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**E&J Equities v. Board of Adjustment of Franklin Township (075207) (A-40-14)**

**Argued March 1, 2016 – Decided September 15, 2016**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers the constitutionality of an ordinance adopted by the Township of Franklin (Township) to regulate billboards, which prohibits the erection of digital billboards in the municipality while allowing static billboards adjacent to an interstate highway that passes through the Township.

In 2008, the Township commenced a review of its ordinance governing signs and billboards. In January 2009, the Director of Planning identified potentially acceptable billboard locations, and suggested billboard bulk and design requirements. The Director recommended limiting billboards to the M-2 (light manufacturing) and General Business zoning districts, and prohibiting signs that moved or gave the illusion of movement, rotated, or produced noise or smoke. On April 7, 2009, the Planning Board forwarded a draft ordinance to the Township Council. The accompanying memorandum recommended that permitting billboards along I-287 would be the most prudent means of addressing potential First Amendment claims by billboard companies, and stated that the draft ordinance was crafted to minimize impact to the character of the Township. The Planning Board further stated that it decided to recommend barring LED billboards because it felt that it did not have sufficient information or expertise to draft language regulating them. The Board suggested that whether LED billboards would be appropriate was best addressed through an application by a billboard company before the Zoning Board of Adjustment (Board).

In September 2009, while the Planning Board and Township Council were considering amendments to the sign ordinance, E&J Equities, LLC (E&J) applied for a variance to install a digital billboard on its property parallel to Interstate Route 287 (I-287) in the M-2 zone. In support of its application, E&J relied on two of a number of published studies which addressed digital billboards and traffic safety, and opined that digital billboards have no statistically significant relationship with the occurrence of accidents.

On May 3, 2010, the Township Council adopted Ordinance 3875-10. The stated purpose of the ordinance was to promote and preserve the aesthetic beauty and character of the Township, and public safety and convenience, and also to protect certain Constitutional rights relative to outdoor advertising. The ordinance permitted static billboards in the M-2 zone, and barred digital billboards in the Township. Following the adoption of the ordinance, the Board voted 4 to 3 in favor of E&J's application. The vote constituted a statutory denial of the use variance, which required five affirmative votes.

E&J commenced this action against the Township, challenging the ban on digital billboards as contrary to the First Amendment of the United States Constitution and Article I, paragraph 6 of the New Jersey Constitution. The trial court determined that the Township failed to establish that the total ban on digital or electronic billboards served a legitimate government interest, and that the ordinance was not narrowly drawn to advance that interest. The trial court found that a single digital billboard was not likely to have any more of an impact on Township aesthetics than a static billboard, and that the Township failed to demonstrate that the ban advanced its stated interest in traffic safety. The trial court therefore held the ordinance invalid.

The Appellate Division reversed in a published decision, and upheld the ordinance. 437 N.J. Super. 490 (App. Div. 2014). The panel stated that the government has a legitimate and substantial interest in preserving the aesthetics of its community and promoting traffic safety. The panel found that the stated purpose of the ordinance, as well as the need for further studies on the impact of digital billboards, provide a rational and objective basis for the Township's determination to ban digital billboards.

This Court granted plaintiff's petition for certification. 220 N.J. 574 (2015).

**HELD:** A digital billboard, as a form of communication, is subject to the protections afforded to speech under the First Amendment to the United States Constitution and the New Jersey Constitution. To the extent that a municipality seeks to restrict billboards, the regulation must find support in the governmental interests that the municipality seeks to protect or advance. Although the Township relied upon aesthetic and public safety concerns in banning digital billboards, while permitting static billboards in designated zones, the record fails to demonstrate that the ban furthers the governmental interests that the Township asserts. The ordinance ban on digital billboards is therefore unconstitutional.

1. Regulations on billboards are justified because signs may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately require regulation by the municipality. If a billboard is adjacent to the interstate highway system, it is subject to the Highway Beautification Act of 1965, Pub. L. No. 89-285. The Legislature has established state controls of roadside advertising in areas adjacent to the federal highway system. (pp. 18-19)

2. The First Amendment protects commercial speech from unwarranted governmental regulation, but such speech is granted less protection than other constitutionally-guaranteed expression. The protection afforded turns on both the nature of the expression and the governmental interests served by its regulation. To balance these factors, the United States Supreme Court has created a four-part test for the regulation of commercial speech, known as the Central Hudson standard. The Court has recognized that laws that regulate only the time, place or manner of speech, stand on a different footing. Such regulations are valid provided that they are content-neutral, narrowly tailored to serve a significant governmental interest, and leave ample alternative channels for communication of the information, under the Clark/Ward time, place and manner standard established by the United States Supreme Court. A municipal ban foreclosing an entire form of media has been held to contravene the First Amendment. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981); Bell v. Township of Stafford, 110 N.J. 384 (1988). Ordinances restricting too little speech or too much protected speech also have been found to be violative of the First Amendment. (pp. 20-37)

3. The Court determines that the Clark/Ward test is the appropriate standard for review of the ordinance based on the variety of commercial and noncommercial messages that a digital billboard can convey, and because the ordinance does not bar all outdoor, off-premises advertising, since signs are permitted, subject to certain conditions, and static billboards are allowed in the M-2 zone adjacent to I-287. Although the ordinance carries a presumption of validity, in light of the constitutional challenge, the Township must demonstrate that the ban on digital billboards satisfies the Clark/Ward standard. (pp. 38-41)

4. The ordinance is content-neutral because the ban on digital billboards addresses a manner of communication, and not its content. The ordinance also does not suppress an entire mode of communication, since it permits signs and static billboards. However, the record does not support the government interests of aesthetics and the safety of travelling motorists that the Township has contended support the ban on digital billboards. (pp. 42-43)

5. The interests of aesthetics and safety upon which the Township relies have long been recognized as legitimate and substantial government interests related to billboards. Although the Township has sought to preserve the bucolic character of sections of the municipality, it permits industrial and corporate development, and has directed that static billboards may be erected in the M-2 zone. Despite the Township's assertion that no standards exist to allow it to address aesthetic and public safety concerns, the considerable body of literature and studies concerning the safety impact, or lack thereof, of digital billboards, suggests a basis for standards that can be applied to enhance traffic safety and mitigate aesthetic concerns with digital billboards. The motor vehicle accident statistics fail to prove either party's arguments on the asserted danger of digital billboards. (pp. 43-45)

6. A more robust factual record in support of the government interests cited by the Township is necessary to satisfy the Clark/Ward standard. In the absence of such support, the ban on digital billboards in the ordinance is unconstitutional. (pp. 45-46)

The judgment of the Appellate Division is **REVERSED**.

**CHIEF JUSTICE RABNER, JUSTICES PATTERSON, FERNANDEZ-VINA and SOLOMON, join in JUDGE CUFF's opinion. JUSTICES LaVECCHIA and ALBIN did not participate.**

2

E&J EQUITIES, LLC, a New
Jersey limited liability
company,

     Plaintiff-Appellant,

        v.

BOARD OF ADJUSTMENT OF THE
TOWNSHIP OF FRANKLIN,

     Defendant,

        and

TOWNSHIP OF FRANKLIN,

     Defendant-Respondent.

     Argued March 1, 2016 – Decided September 15, 2016

     On certification to the Superior Court, Appellate Division, whose opinion is reported at 437 N.J. Super. 490 (App. Div. 2014).

     Francis P. Linnus argued the cause for appellant (Mr. Linnus, attorney; Benjamin T. Wetzel, on the briefs).

     Louis N. Rainone argued the cause for respondent (DeCotiis, Fitzpatrick & Cole, attorneys; Mr. Rainone, Jason D. Attwood, and Victoria A. Flynn, on the briefs).

     Ronald K. Chen argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director and Rutgers Constitutional Rights Clinic Center for Law & Justice, attorneys; Mr. Chen, Mr. Barocas, Jeanne M. LoCicero,

1

        Alexander R. Shalom, and Andrew Gimigliano,
        of counsel and on the brief).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

In 2010, the Township of Franklin (the Township) adopted an ordinance revising its regulation of signs, including billboards. The ordinance permits billboards, subject to multiple conditions, in a zoning district proximate to an interstate highway but expressly prohibits digital billboards anywhere in the municipality.

A company seeking to install a digital billboard challenged the constitutionality of the ordinance. The Law Division declared unconstitutional that portion of the ordinance barring digital billboards. The trial court viewed the Township's treatment of such devices as a total ban on a mode of communication. In a reported opinion, the Appellate Division reversed. Applying the Central Hudson[1] commercial speech standard and the Clark/Ward[2] time, place, and manner standard to content-neutral regulations affecting speech, the appellate

---

[1] Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980).

[2] Ward v. Rock Against Racism, 491 U.S. 781, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989); Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984).

2

panel determined that the ban on digital billboards passed constitutional muster.

We acknowledge that aesthetics and public safety are generally considered to be substantial governmental interests, particularly in the context of regulations affecting billboards. Nevertheless, billboards generally or specific types of billboards are a medium of communication, and any regulation of that medium may not transgress the United States Constitution or the Constitution of this State. Thus, simply invoking aesthetics and public safety to ban a type of sign, without more, does not carry the day.

Here, the Township, citing aesthetic and public safety concerns, permitted billboards to be installed in a single zoning district proximate to a heavily travelled interstate highway but prohibited digital billboards in the same zone. The Township did so on the basis of information gathered by its Director of Planning, Planning Board, and a Land Use Committee of the municipal governing body. Nevertheless, the record provides scant support for several propositions that informed the Township's decision and no support for the decision that the aesthetics of three billboards are more palatable than the aesthetics of a single digital billboard. Although we do not consider the digital billboard ban equivalent to a total ban on a medium of communication, it is a form of communication that is

3

subject to the protection of the First Amendment. To that end, the record must support, to some degree, the interests that the municipality seeks to protect or advance. The record fails to support this restriction. We therefore declare that the 2010 ban on digital billboards is unconstitutional and reverse the judgment of the Appellate Division.

I.

The Township is the second-largest municipality in Somerset County, covering forty-seven square miles. Sixty-two thousand persons reside in the Township. A former planner for the Township described it "as a mosaic of various development patterns."

Some sections of the Township are rural, and some sections contain historic villages. A road that passes through the Township has been designated a national scenic byway. Other portions of the Township are highly developed. Interstate Route 287 (I-287), a highway that carries over 100,000 cars and trucks daily, passes through the Township. The I-287 corridor is bordered by an M-2 Light Manufacturing zoning district (hereinafter the M-2 zone),[3] which permits various industrial and

---

[3] The M-2 zone permits the following uses: manufacturing, fabrication and assembly of various products including light machinery, wood and paper products and metal furniture, bottling of food and beverages, food processing, manufacturing of liquors, laboratories, industrial parks, warehouses, general office buildings, administrative and dispatch services, hotels,

4

corporate uses.  The Township has aggressively sought to preserve farmland and open space.  To that end, it has preserved thirty-four percent of the real property in the Township.

In 2008, the Township commenced a review of its ordinance governing signs and billboards.  The Township did so at the suggestion of its insurance company, which noticed some inconsistencies in the existing ordinance.  At the time, billboards were permitted in the Township's General Business zoning district as a conditional use.  The ordinance, however, failed to define a billboard and did not identify any conditions for approval of an application to construct a billboard.  The Township also prohibited signs with electronic script or electronic bulletin boards.

Upon notice to the public, the Township Council and the Planning Board commenced a two-year review of the Township's sign ordinance.  During the course of the review, the Planning Board conducted a survey of existing billboards[4] and identified potentially acceptable locations for billboards on two highways in the Township -- State Highway 27 and I-287.

---

indoor recreational uses, child care centers, and personal storage facilities.  Franklin Twp., N.J., Code ch. 112, Schedule 1 (2015).

[4] Three existed at the time, but none were located in the M-2 zone.

The discussions of the Planning Board were followed closely by plaintiff E&J Equities, LLC (E&J), which owns property along I-287 in the M-2 zone. E&J made a presentation to the Planning Board about the features and benefits of digital billboards, and it submitted a proposed ordinance prepared by its attorney as well as other material prepared by a professional engineer and planner it retained. The ordinance proposed by E&J permitted billboards with changing imagery and the use of LED or equivalent technology.

In January 2009, the Director of Planning forwarded a memorandum to the Planning Board identifying potentially acceptable billboard locations and suggesting billboard bulk and design requirements. The Director of Planning recommended limiting billboards to the M-2 and General Business zoning districts, and prohibiting signs that moved or gave the illusion of movement, rotated, or produced noise or smoke. The Director of Planning also recommended that neither signs nor billboards should display videos or other changing imagery. The Director of Planning also suggested standards for illumination of any billboards and a ban on words or symbols, such as "STOP" or "DANGER," that might be interpreted by a passerby as a command issued by a public authority.

On April 7, 2009, the Planning Board forwarded a draft ordinance to the Township Council. The accompanying memorandum

6

from the Planning Board outlined the process it had employed and advised that it "determined that permitting billboards along I-287 would be the most prudent means of addressing potential First Amendment claims on the part of billboard companies." The memorandum also stated that the draft ordinance "was carefully crafted to minimize impact to the character of Franklin, particularly to the residential properties on the north side of I-287." Finally, the Planning Board reported that it had decided to recommend barring "LED billboards" because "the Board felt that it did not have enough information or sufficient expertise to craft ordinance language to appropriately address LED billboards."

Notably, the Planning Board suggested that the question whether such LED billboards would be appropriate was best addressed by an application by a billboard company before the Zoning Board of Adjustment. Later, in defense of the ordinance adopted by the Township Council, the Director of Planning added that the Planning Board and the Land Use Committee of the Township Council believed that the Planning Board made its recommendation and the Township Council adopted the new billboard ordinance because "there was no conclusive source or documentation that digital billboards were safe, or some literature that the Board or Committee could depend on to come up with reasonable standards."

In September 2009, E&J submitted an application to the Zoning Board of Adjustment for a variance to construct and install a digital billboard on its property parallel to I-287. E&J's property is located in the M-2 zone. The area immediately south of the zone consists of several shopping centers, large supermarkets, banks, several large drug stores, and senior housing projects. The closest residential neighborhood to the proposed billboard is 500 feet across the highway. A heavily vegetated buffer separates the homes from the highway.

At the time the Planning Board and Township Council were considering amendments to the sign ordinance, and the Zoning Board of Adjustment was considering E&J's application for a use variance, a number of studies investigating the relationship between digital billboards and traffic safety were published. The Director of Planning acknowledged that he was familiar with those studies, and stated that he had concluded there was a lack of "conclusive guidance on the issue." Two of those studies, one from Rochester, Minnesota, and the other from Cuyahoga County (including Cleveland), Ohio, were submitted by E&J in support of its variance application before the Board of Adjustment. Each study opined that "digital billboards in [city or county] have no statistically significant relationship with the occurrence of accidents."

The methodology used in those studies was sharply criticized in a report issued in April 2009 prepared by Jerry Wachtel (the Wachtel Report) commissioned by the Association of State Highway and Transportation Officials. The Wachtel Report concluded that "the issue of the role of [digital billboards] in traffic safety is extremely complex," that the rapidly changing digital billboard technology complicates the task of assessing risk, and that the absence of uniform criteria for assessing the relationship between billboards and traffic safety has hampered local officials' ability to assess the traffic safety risk of digital billboards. Nevertheless, the Wachtel Report determined that the plethora of studies reviewed supported the conclusion that

> [t]he research underway by [the Federal Highway Administration as of April 2009] may begin to provide specific, directed answers to assist those officials in their work. In the interim, those governmental agencies and toll road operators, faced with the need to make such decisions now have, in our opinion, a sufficient and sound basis for [reviewing applications for digital billboards].

Both E&J's planner and the Director of Planning acknowledged familiarity with the Wachtel Report during consideration of the 2010 ordinance.

Since 1996, the New Jersey Department of Transportation (NJDOT) has permitted off-premises digital billboards or multiple message signs on the interstate highway system. 28

9

N.J.R. 4742(a) (Nov. 4, 1996). Such signs are governed by regulations that establish minimum distance requirements between a digital billboard and an official variable message board, N.J.A.C. 16:41C-11.1(a)(6);[5] bar illumination by intermittent or moving light, N.J.A.C. 16:41C-11.1(a)(4); and establish the minimum time a message must remain fixed before a new message can be displayed, N.J.A.C. 16:41C-11.1(a)(3). Under those regulations, a neighboring municipality, South Plainfield, permitted installation of a digital billboard along a portion of I-287 traversing that borough.

On May 3, 2010, the Township Council adopted Ordinance 3875-10. Franklin Twp., N.J., Ordinance 3875-10 (2010) (the Ordinance). The stated purpose of the Ordinance is "to balance the need to control and regulate billboards, promote and preserve the scenic beauty and character of the Township, provide for the safety and convenience of the public, and to recognize certain Constitutional rights relative to outdoor advertising." The Ordinance permits static billboards in the M-2 zone. Id. § 112-114.1. The Ordinance added Section 53.1 to Chapter 112 of the Township Code. Id. § 112-53.1. The challenged section of the Ordinance provides, in relevant part:

> No billboard or billboard display area or portion thereof shall rotate, move, produce

---

[5] Until March 2, 2015, the regulations governing off-premises digital billboards were codified at N.J.A.C. 16:41C-8.8.

10

> noise or smoke, give the illusion of movement, display video or other changing imagery, automatically change, or be animated or blinking, nor shall any billboard or portion thereof have any electronic, digital, tri-vision or other animated characteristics resulting in an automatically changing depiction.
>
> [Id. § 112-53.1(C)(3).][6]

Allowing for the minimum spacing of 1000 feet between permitted billboards, N.J.A.C. 16:41C-8.1(d)(3), three static billboards can be erected in the Township. Allowing for the minimum spacing of 3000 feet between digital billboards, N.J.A.C. 16:41C-11.1(a)(5), only one digital billboard can be erected in the Township.

Following adoption of the Ordinance, the Zoning Board of Adjustment voted four to three in favor of E&J's application. The effect of the vote is a statutory denial of the use variance for a digital billboard because N.J.S.A. 40:55D-70(d)(3) requires five members to vote in favor of a variance application.

---

[6] The Ordinance also amended Section 112-109J, of Chapter 112, Land Development, Article XII, Sign Regulations, Section 112-109, Prohibited Signs, to make it consistent with the Ordinance. The new provision states: "No sign or portion thereof shall rotate, move, produce noise or smoke, display video or other changing imagery, automatically change, or be animated or blinking, nor shall any sign or portion thereof have any electronic, digital, tri-vision or other animated characteristics."

To date, traffic safety remains a concern at the location of the proposed digital billboard.  According to motor vehicle accident statistics cited by the Township, the portion of I-287 on which E&J proposed to install a digital billboard had 181 crashes in 2010 and 176 crashes in 2011, making it the portion of I-287 with the greatest number of crashes in 2010 and the second-greatest number of crashes in 2011.  N.J. Dep't of Transp., Summary of Crash Rates on State and Interstate Highways in Route and Milepost Order for 2011 183 (June 21, 2012), http://www.state.nj.us/transportation/refdata/accident/11/route11.pdf (2011 Crash Rates) (stating that, between mileposts 10.48 and 12.30 on I-287, there were 176 crashes in 2011); N.J. Dep't of Transp., Summary of Crash Rates on State and Interstate Highways in Route and Milepost Order for 2010 187 (Nov. 17, 2011), http://www.state.nj.us/transportation/refdata/accident/10/route10.pdf (2010 Crash Rates) (stating that, between mileposts 10.48 and 12.30 on I-287, there were 181 crashes in 2010).  Notably, however, the segment of I-287 in South Plainfield, where a digital billboard has been located for several years, experienced only 70 crashes in 2010 and 48 in 2011.  See 2011 Crash Rates, supra; 2010 Crash Rates, supra.

II.

A.

12

E&J filed a complaint in lieu of prerogative writs against the Township's Zoning Board of Adjustment and the Township. E&J challenged the constitutionality of the section of the Ordinance prohibiting digital billboards, alleging that it contravened the First Amendment of the United States Constitution and Article I, paragraph 6 of the New Jersey Constitution. At trial, E&J and the Township presented witnesses who testified about the technical details of digital billboards, the economic benefits of digital billboards, the types of messages that can be displayed on them, and the impact on traffic safety of such devices. The parties also presented evidence about the legislative process, the purposes of the Ordinance, and the alternative means to communicate certain messages.

The trial court determined that "the Township has failed to meet the First Amendment intermediate scrutiny standard required for commercial speech restrictions." In doing so, the trial court determined that the Ordinance banned an entire medium of speech and burdened commercial speech. Applying the intermediate scrutiny standard, the trial court determined that the Township failed to establish that the total ban on digital or electronic billboards served a legitimate government interest and that the Ordinance was not narrowly drawn to advance that interest.

13

In particular, the trial court found that "one digital billboard, by itself, was not likely to have any more of an impact on [T]ownship aesthetics than a static billboard." The trial court also found that the Township failed to demonstrate that the complete ban of this medium of expression advanced its stated interest in traffic safety. The trial court accepted as credible the traffic safety studies submitted by E&J which uniformly found no correlation between the installation of digital billboards and any increase in traffic accidents, and characterized the Township's justification as supported by nothing more than speculation. Having found that the Township's ban on digital billboards was more expansive than necessary to advance the identified governmental interests, the trial court declared the Ordinance invalid.

B.

On appeal, the Appellate Division reversed the trial court and found that the Ordinance "passe[d] constitutional muster." E&J Equities, LLC v. Bd. of Adjustment of Franklin, 437 N.J. Super. 490, 496 (App. Div. 2014). The Appellate Division agreed that "a time, place, and manner review" was appropriate, and criticized the trial court's reliance on Bell v. Township of Stafford, 110 N.J. 384 (1988). E&J Equities, supra, 437 N.J. Super. at 496, 506. Such reliance, the panel found, "required the Township to meet standards not required in the review of

14

content-neutral time, place and manner restrictions." Id. at 504.

The panel also determined that the Central Hudson test "governs the review of restrictions on commercial speech that are not content-neutral." Id. at 507. The Appellate Division noted that "somewhat wider leeway" was afforded to content-neutral regulations. Id. at 508 (quoting McCullen v. Coakley, ___ U.S. ___, ___, 134 S. Ct. 2518, 2529, 189 L. Ed. 2d 502, 514 (2014)).

The panel stated that "the standard governing the regulation of commercial speech that is not content-neutral and the standard applicable to time, place, and manner restrictions, are often 'closely intertwined.'" Ibid. The appellate panel proceeded to analyze the Ordinance de novo under the Clark/Ward standard. Id. at 509-19. Concluding that the restriction imposed by the Ordinance is content neutral, id. at 509-10, the panel stated that "[i]t is universally recognized that [the] government has a legitimate, even substantial, interest in preserving the aesthetics of its community and in promoting traffic safety," id. at 512. The panel determined that the Township's stated reasons, as well as the need for further studies on the impact of such billboards, "provides a rational, objective basis for the Township's decision to refrain from adopting a regulation of them." Id. at 514. The panel also

15

recognized that "a regulation need not be 'the least restrictive means' to satisfy the requirement that a content-neutral restriction on time, place, and manner [of speech] be 'narrowly tailored.'" Id. at 515. The Appellate Division concluded that the concerns triggered by the new form of outdoor advertising was reasonable and no broader than necessary "to eliminate [the] heightened intrusive quality" of digital billboards. Id. at 518. Lastly, the Appellate Division determined that the Township has adequate alternatives for communicating certain messages that can be displayed on a digital billboard, particularly emergency messages. Id. at 519. The panel cited the NJDOT signs located along I-287 and other measures, such as reverse 9-1-1 calls and emails, used in the Township. Ibid.

We granted E&J's petition for certification. 220 N.J. 574 (2015). We also permitted the American Civil Liberties Union of New Jersey (ACLU-NJ) to appear as amicus curiae.

### III.

E&J contends that the ban on digital billboards restricts commercial and noncommercial speech. It therefore maintains that the Court should apply the strict scrutiny standard to the noncommercial speech ban and the intermediate scrutiny standard to the commercial speech restrictions. E&J contends that the Township has not met its burden under either standard because the Township failed to demonstrate that the stated reasons for

16

the ban -- maintaining the aesthetic character of the Township and traffic safety -- are significant and substantial interests.

The Township contends that the digital billboard ban represents a valid exercise of government authority. It maintains that the intermediate scrutiny standards outlined in Central Hudson and Clark/Ward are the appropriate standards. The Township argues that the digital billboard ban is content neutral and that it demonstrated that its aesthetic and traffic concerns are real and reasonable and provide an objective and rational basis for the restriction.

Amicus ACLU-NJ contends that the Appellate Division judgment should be reversed. ACLU-NJ maintains that the Township bore the burden of establishing that the digital billboard ban advances a substantial government interest and is no more expansive than necessary. ACLU-NJ contends that the Township has neither established the existence of an actual threat to safety attributable to a single digital billboard nor narrowly tailored its Ordinance. Furthermore, amicus argues that the Township's reliance on advancing its interest in aesthetics is unsupported and does not justify a complete ban on the distinct form of communication represented by digital billboards. Finally, ACLU-NJ argues that the Township failed to establish a reasonable factual basis that alternative means of communication are available to reach the intended audience.

17

IV.

We commence our scrutiny of the Ordinance with review of the regulatory process governing billboards.

Billboards of any kind are subject to considerable regulation. Regulations on billboards are justified because "signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs[.]" City of Ladue v. Gilleo, 512 U.S. 43, 48, 114 S. Ct. 2038, 2041, 129 L. Ed. 2d 36, 42-43 (1994). Further, some scholars have suggested that while "[t]raditional billboards have been debated for decades, . . . digital technology has significantly raised the stakes." Susan C. Sharpe, "Between Beauty and Beer Signs": Why Digital Billboards Violate the Letter and Spirit of the Highway Beautification Act of 1965, 64 Rutgers L. Rev. 515, 517 (2012) (arguing that digital billboards "command far more profits," "attract far more attention," and "are far more intrusive to communities" than traditional billboards).

If a billboard is adjacent to the interstate highway system, it is subject to the Highway Beautification Act of 1965, Pub. L. No. 89-285, 79 Stat. 1028 (codified as amended in scattered sections of 23 U.S.C.A.). That statute requires

18

states to take "effective control of the erection and maintenance" of outdoor advertising signs located within 660 feet of that system. 23 U.S.C.A. § 131(b). Outdoor advertising signs are permitted in areas adjacent to those systems which are zoned industrial or commercial, with "size, lighting and spacing, consistent with customary use . . . to be determined by agreement between the several states and the Secretary [of Transportation]." 23 U.S.C.A. § 131(d). When a local zoning authority "has made a determination of customary use," that determination controls within the locality. Ibid.

In accordance with those provisions, the Legislature established state controls of roadside advertising in areas adjacent to the federal interstate system and authorized the Commissioner of Transportation to enter into agreements with the United States Secretary of Transportation. N.J.S.A. 27:5-5 to -26. Pursuant to N.J.S.A. 27:5-11(a), municipalities continue to control local land use, but, in the event of conflict, state regulations prevail to the extent necessary to permit the state to carry out its declared policy or to permit the state to comply with its agreement with the United States Department of Transportation. See also N.J.A.C. 16:41C-6.3(e)(2). NJDOT had issued a permit for a digital billboard to E&J subject to local zoning.

V.

19

A.

The First Amendment to the United States Constitution states, "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Similarly, "[t]he New Jersey Constitution guarantees a broad affirmative right to free speech[.]" Dublirer v. 2000 Linwood Ave. Owners, Inc., 220 N.J. 71, 78 (2014) (citing N.J. Const. art. I, ¶ 6).

"Because our State Constitution's free speech clause is generally interpreted as co-extensive with the First Amendment, federal constitutional principles guide the Court's analysis." Twp. of Pennsauken v. Schad, 160 N.J. 156, 176 (1999) (citing Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 264-65 (1998)). The few exceptions where the State Constitution provides greater protection are not at issue here. See, e.g., Dublirer, supra, 220 N.J. at 71 (state action); W.J.A. v. D.A., 210 N.J. 229, 242 (2012) (defamation).

Different types of speech are afforded different levels of protection, and some forms of expression are beyond the scope of the First Amendment. See Snyder v. Phelps, 562 U.S. 443, 452, 131 S. Ct. 1207, 1215, 179 L. Ed. 2d 172, 181 (2011); R.A.V. v. St. Paul, 505 U.S. 377, 382-83, 112 S. Ct. 2538, 2542-43, 120 L. Ed. 2d 305, 317 (1992). "If a statute regulates speech based on

20

its content, it must be narrowly tailored to promote a compelling Government interest." United States v. Playboy Entm't Grp., 529 U.S. 803, 813, 120 S. Ct. 1878, 1886, 146 L. Ed. 2d 865, 879 (2000) (citing Sable Commc'ns of Cal., Inc. v. FCC, 492 U.S. 115, 126, 109 S. Ct. 2829, 2836, 106 L. Ed. 2d 93, 105 (1989)). Similarly, "[l]aws that burden political speech are 'subject to strict scrutiny[.]'" Citizens United v. FEC, 558 U.S. 310, 340, 130 S. Ct. 876, 898, 175 L. Ed. 2d 753, 782 (2010) (quoting FEC v. Wis. Right to Life, Inc., 551 U.S. 449, 464, 127 S. Ct. 2652, 2664, 168 L. Ed. 2d 329, 343 (2007)); see also Schad, supra, 160 N.J. at 177.

"The First Amendment . . . protects commercial speech from unwarranted governmental regulation. Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557, 561-62, 100 S. Ct. 2343, 2349, 65 L. Ed. 2d 341, 348 (1980) (internal citation omitted).

"Commercial speech, however, is granted less protection than other constitutionally-guaranteed expression." Schad, supra, 160 N.J. at 175 (citing Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 72 (1985)); see also Cent. Hudson, supra, 447 U.S. at 563, 100 S. Ct. at 2350, 65 L. Ed. 2d at 348-49. Instead,

21

"commercial speech [is afforded] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 506, 101 S. Ct. 2882, 2892, 69 L. Ed. 2d 800, 814 (1981) (quoting Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456, 98 S. Ct. 1912, 1918, 56 L. Ed. 2d 444, 453 (1978)).

Most commonly, commercial speech has been defined as "expression related solely to the economic interests of the speaker and its audience[,]" or "speech proposing a commercial transaction[.]" Cent. Hudson, supra, 447 U.S. at 561-62, 100 S. Ct. at 2349, 65 L. Ed. 2d at 348 (citations omitted).

"The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." Id. at 563, 100 S. Ct. at 2350, 65 L. Ed. 2d at 349. To balance these factors, the United States Supreme Court created a four-part test for commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries

22

> yield positive answers, we must determine
> whether the regulation directly advances the
> governmental interest asserted, and whether it
> is not more extensive than is necessary to
> serve that interest.
>
> [Id. at 566, 100 S. Ct. at 2351, 65 L. Ed. 2d
> at 351.]

"[T]he effect of the challenged restriction on commercial speech ha[s] to be evaluated in the context of the entire regulatory scheme, rather than in isolation[.]" Greater New Orleans Broad. Ass'n v. United States, 527 U.S. 173, 192, 119 S. Ct. 1923, 1934, 144 L. Ed. 2d 161, 180 (1999).

"[L]aws regulating the time, place, or manner of speech stand on a different footing from laws prohibiting speech altogether." Linmark Assocs. v. Twp. of Willingboro, 431 U.S. 85, 93, 97 S. Ct. 1614, 1618, 52 L. Ed. 2d 155, 162 (1977). The United States Supreme Court has consistently held that

> [e]xpression, whether oral or written or
> symbolized by conduct, is subject to
> reasonable time, place, and manner
> restrictions. We have often noted that
> restrictions of this kind are valid provided
> that they are justified without reference to
> the content of the regulated speech, that they
> are narrowly tailored to serve a significant
> governmental interest, and that they leave
> open ample alternative channels for
> communication of the information.
>
> [Clark, supra, 468 U.S. at 293, 104 S. Ct. at
> 3069, 82 L. Ed. 2d at 227 (citations
> omitted).]

See also id. at 308, 104 S. Ct. at 3076, 82 L. Ed. 2d at 236

23

(Marshall, J., dissenting); Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2753, 105 L. Ed. 2d at 675 (quoting Clark, supra, 468 U.S. at 293, 104 S. Ct. at 3069, 82 L. Ed. 2d at 227).

The threshold inquiry is whether the regulation of expressive activity is content neutral. See Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2753-54, 82 L. Ed. 2d at 675. "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" Id. at 791, 109 S. Ct. at 2754, 105 L. Ed. 2d at 675 (quoting Clark, supra, 468 U.S. at 293, 104 S. Ct. at 3069, 82 L. Ed. 2d at 227); see also Linmark, supra, 431 U.S. at 94, 97 S. Ct. at 1619, 52 L. Ed. 2d at 163 (holding that ordinance which banned "for sale" signs could not be time, place, or manner restriction because it only prohibited certain types of signs, "based on their content"); State v. DeAngelo, 197 N.J. 478, 487 (2009)  (holding that laws are "content-based" if they "distinguish favored speech from disfavored speech on the basis of the ideas or views expressed" and "content-neutral" if they "confer benefits or impose burdens on speech without reference to the ideas or views expressed[.]" (quoting Turner Broad. Sys. v. F.C.C., 512 U.S. 622, 642, 114 S. Ct. 2445, 2459, 129 L. Ed. 2d 497, 517 (1994))).

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in

24

particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2754, 105 L. Ed. 2d at 675 (citing Clark, supra, 468 U.S. at 295, 104 S. Ct. at 3070, 82 L. Ed. 2d at 228). When courts assess content neutrality, "[t]he government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ibid. By contrast, when a regulation "favors commercial over non-commercial speech and, more importantly, [where] a violation of the ordinance is based on the purpose for which the sign is displayed, . . . [that regulation] is content-based." DeAngelo, supra, 197 N.J. at 488.

Under the second part of the time, place, and manner test, courts assess the government's asserted interests as well as the fit between the interests served and the means used. The Supreme Court has noted that "the validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." Ward, supra, 491 U.S. at 801, 109 S. Ct. at 2759, 105 L. Ed. 2d at 682. A regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less

effectively absent the regulation." Id. at 799, 109 S. Ct. at 2757-58, 105 L. Ed. 2d at 680 (quoting United States v. Albertini, 472 U.S. 675, 689, 105 S. Ct. 2897, 2906, 86 L. Ed. 2d 536, 548 (1985)). Moreover, a regulation is not invalid "simply because there is some imaginable alternative that might be less burdensome on speech." Id. at 797, 109 S. Ct. at 2757, 105 L. Ed. 2d at 679 (citation omitted). On the other hand, a restriction may not "burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." Id. at 799, 109 S. Ct. at 2758, 105 L. Ed. 2d at 681.

When speech is restricted, there must be alternative means of communicating the message, although there is some disagreement as to what are qualified alternative channels. In Linmark, supra, the United States Supreme Court held that "[t]he alternatives . . . are far from satisfactory" when "[t]he options to which sellers realistically are relegated . . . involve more cost and less autonomy[,] . . . are less likely to reach persons not deliberately seeking sales information, and may be less effective media for communicating the message[.]" 431 U.S. at 93, 97 S. Ct. at 1618, 52 L. Ed. 2d at 162 (internal citations omitted). Similarly, in Metromedia, supra, the Court

26

accepted the parties' stipulations that alternative channels were inadequate.  453 U.S. at 516, 101 S. Ct. at 2897, 69 L. Ed. 2d at 820.

Some federal appellate courts, however, have found that "[t]he First Amendment does not guarantee a right to the most cost-effective means of [speech.]"  Naser Jewelers, Inc. v. City of Concord, 513 F.3d 27, 37 (1st Cir. 2008) (second alteration in original) (quoting Globe Newspaper Co. v. Beacon Hill Architectural Comm'n, 100 F.3d 175, 193 (1st Cir. 1996)).  The Third Circuit found that "maximizing . . . profit is not the animating concern of the First Amendment.  The fact that restrictions prohibit a form of speech attractive to plaintiff does not mean that no reasonable alternative channels of communication are available."  Interstate Outdoor Advert., L.P. v. Zoning Bd. of Mt. Laurel, 706 F.3d 527, 535 (3d Cir. 2013) (alteration in original) (quoting Naser Jewelers, supra, 513 F.3d at 37).

The United States Supreme Court has observed that "[e]ach method of communicating ideas is 'a law unto itself' and that law must reflect the 'differing natures, values, abuses and dangers' of each method."  Metromedia, supra, 453 U.S. at 501, 101 S. Ct. at 2889, 69 L. Ed. 2d at 810-11 (quoting Kovacs v. Cooper, 336 U.S. 77, 97, 69 S. Ct. 448, 459, 93 L. Ed. 513, 528 (1949)).  Billboards are no exception.  Despite their ubiquity

27

along main highways in this country and their use to communicate a wide variety of messages, "the billboard remains a 'large, immobile, and permanent structure which like other structures is subject to . . . regulation.'" Id. at 502, 101 S. Ct. at 2889-90, 69 L. Ed. 2d at 811 (alteration in original) (citation omitted).

First Amendment jurisprudence regarding the regulation of billboards and signs falls roughly into two categories: those regulations that prohibit billboards or signs of any kind and those that impose conditions on the size and mode of communication. Two analytically distinct grounds have emerged to challenge billboard or sign regulation. One avenue of attack is that the ordinance "restricts too little speech because its exemptions discriminate on the basis of the signs' messages. Ladue, supra, 512 U.S. at 51, 114 S. Ct. at 2043, 129 L. Ed. 2d at 44. The other is that the measure "simply prohibit[s] too much protected speech." Ibid.

B.

We turn to Metromedia, the seminal case on the regulation of billboards, to discuss the constitutional principles governing regulations of billboards. Metromedia, supra, addressed a city ordinance which permitted onsite commercial advertising but prohibited other fixed-structure signs, including billboards, unless a sign fell within one of several

28

enumerated exceptions. 453 U.S. at 495-96, 101 S. Ct. at 2886, 69 L. Ed. 2d at 807. The ordinance created exceptions for onsite signs and signs in twelve exempted categories, id. at 494, 101 S. Ct. at 2885-86, 69 L. Ed. 2d at 806-07, "but other commercial advertising and noncommercial communications using fixed-structure signs [were] everywhere forbidden unless permitted by one of the specified exceptions," id. at 496, 101 S. Ct. at 2886, 69 L. Ed. 2d at 807. Several outdoor advertising companies challenged the ordinance. Ibid.

In its analysis, the plurality "consider[ed] separately the effect of the ordinance on commercial and noncommercial speech." Id. at 505, 101 S. Ct. at 2891, 69 L. Ed. 2d at 813. With regard to commercial speech, the plurality applied the four-prong Central Hudson test and found that the ordinance was constitutional. Id. at 507, 101 S. Ct. at 2892, 69 L. Ed. 2d at 815.[7] The Metromedia plurality found that prongs one, two, and four of the Central Hudson test were uncontroversial. Ibid. Notably, the plurality held that traffic safety and aesthetics, the only purposes identified by the ordinance, are "substantial

---

[7] The Central Hudson test is a four-prong inquiry: first, whether the restricted expression enjoys constitutional protection; second, whether the state has asserted a substantial interest to be achieved by the restrictions; third, whether the restriction "directly advances the governmental interest asserted"; and fourth, whether the restriction is no more extensive than necessary to serve that interest. Cent. Hudson, supra, 447 U.S. at 566, 102 S. Ct. at 2351, 65 L. Ed. 2d at 351.

government goals." Id. at 507-08, 101 S. Ct. at 2892, 69 L. Ed. 2d at 815. The plurality also stated that "[i]f the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." Id. at 508, 101 S. Ct. at 2893, 69 L. Ed. 2d at 815.

The Court then considered the "more serious question" of whether the ordinance directly advances the government's interests, and thereby satisfies the third prong of the Central Hudson test. Ibid. The plurality answered in the affirmative, finding that the ordinance advanced the government's interests in traffic safety and aesthetics. Justice White, writing for the plurality, noted the California Supreme Court's finding that "[b]illboards are intended to, and undoubtedly do, divert a driver's attention from the roadway," and stated, "[w]e likewise hesitate to disagree with the accumulated, commonsense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety." Id. at 508-09, 101 S. Ct. at 2893, 69 L. Ed. 2d at 815-16 (first alteration in original) (internal citation omitted).

Additionally, the plurality did not find that the city's interest was undermined by underinclusiveness because the ordinance permitted onsite advertising and other exempted signs.

*Id.* at 510-11, 101 S. Ct. at 2894, 69 L. Ed. 2d at 817. "[W]hether onsite advertising is permitted or not, the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and esthetics. . . . [T]he city may believe that offsite advertising, with its periodically changing content, presents a more acute problem than does onsite advertising." *Id.* at 511, 101 S. Ct. at 2894, 69 L. Ed. 2d at 817. Thus, the plurality held that "insofar as it regulates commercial speech the San Diego ordinance meets the constitutional requirements of Central Hudson[.]" *Id.* at 512, 101 S. Ct. at 2895, 69 L. Ed. 2d at 818.

Because the total ban of offsite billboards included both commercial and noncommercial speech, however, the plurality found that the ordinance was unconstitutional on its face as to the noncommercial speech banned by the ordinance. *Id.* at 521, 101 S. Ct. at 2899, 69 L. Ed. 2d at 823. The plurality held that "[i]nsofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." *Id.* at 513, 101 S. Ct. at 2895, 69 L. Ed. 2d at 818. Additionally, the plurality found that the ordinance was not "appropriately characterized as a reasonable

31

'time, place, and manner' restriction" because the ordinance distinguished between signs based on content.  Id. at 515-17, 101 S. Ct. at 2896-97, 69 L. Ed. 2d at 820.

Justice Brennan wrote separately.  Because he approached the ordinance as a total ban on a distinctive medium, Justice Brennan would have applied the Supreme Court's tests that were "developed to analyze content-neutral prohibitions of particular media of communication."  Id. at 526-27, 101 S. Ct. at 2902, 69 L. Ed. 2d at 826-27 (Brennan, J., concurring) (citing Schad v. Mt. Ephraim, 452 U.S. 61, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981), in which "Court assessed 'the substantiality of the governmental interest asserted' and 'whether those interests could be served by means that would be less intrusive on activity protected by the First Amendment'").  Under such a test, Justice Brennan found the ordinance invalid.  Id. at 528, 101 S. Ct. at 2903, 69 L. Ed. 2d at 827.  Justice Brennan found that the city's sole asserted interest, aesthetics in its "commercial and industrial areas," was insufficient.  Id. at 530, 101 S. Ct. at 2904, 69 L. Ed. 2d at 829. Justice Stevens dissented in part.  He agreed with the plurality that San Diego could constitutionally distinguish between onsite and offsite commercial signs.  Id. at 541, 101 S. Ct. at 2909-10, 69 L. Ed. 2d at 836 (Stevens, J., dissenting in part). However, Justice Stevens would have held that as long as it was

32

impartial, the city could "entirely ban one medium of communication." Id. at 542, 553, 101 S. Ct. at 2910, 2916, 69 L. Ed. 2d at 836, 843. Justice Stevens did not believe that the content-neutral exceptions affected the analysis and would have upheld the ordinance. Id. at 542, 101 S. Ct. at 2910, 69 L. Ed. 2d at 836. Both Chief Justice Burger and then-Justice Rehnquist, in separate dissents, lamented the use of the federal court's power to address a traditionally local concern, worthy of deference. See id. at 556, 101 S. Ct. at 2917, 69 L. Ed. at 845 (Burger, C.J., dissenting); id. at 570, 101 S. Ct. at 2925, 69 L. Ed. 2d at 854-55 (Rehnquist, J., dissenting).

In Bell, supra, this Court applied Metromedia and its prior sign jurisprudence to invalidate a municipal ordinance prohibiting "[b]illboards, signboards and off-premises advertising signs and devices[.]" 110 N.J. at 387 (first alteration in original). Characterizing the ban as a drastic and direct encroachment of constitutionally protected freedom of speech and expression, the Court assigned to the municipality a "particularly strenuous" burden to overcome the constitutional challenge. Id. at 395-96 (citations omitted). Noting that the municipality failed to identify any government objective furthered by the ban or to provide any facts to support the ban, the Court found that the municipality could not demonstrate that the ban was the least-restrictive means to achieve the

33

government interest.  Id. at 396-97.  Moreover, the Court found that the municipality failed to make any showing of alternate means of communicating the messages that would have been displayed in the prohibited signage.  Id. at 397.  The Court therefore declared the complete ban on off-premises advertising unconstitutional.  Id. at 398.

Metromedia and Bell represent instances in which a municipal ban foreclosing an entire form of media has been held to contravene the First Amendment.  A restriction on the content of signage also may contravene the First Amendment guarantee of free speech.  Linmark, supra, 431 U.S. 85, 97 S. Ct. 1614, 52 L. Ed. 2d 155, and Ladue, supra, 512 U.S. 43, 114 S. Ct. 2038, 129 L. Ed. 2d 36, respectively, represent instances in which a regulation of speech that is underinclusive of permitted messages or the combination of a general speech restriction accompanied by multiple exemptions to that ban may yield an unconstitutional selection of permissible messages.

Linmark, supra, illustrates a regulation restricting too little speech.  431 U.S. 85, 97 S. Ct. 1614, 52 L. Ed. 2d 155. There, an ordinance generally permitted signs for commercial and noncommercial purposes but expressly prohibited signs announcing that a house was "For Sale" or "Sold."  Id. at 86, 97 S. Ct. at 1615, 52 L. Ed. 2d at 157-58.  The ostensible purpose of the ordinance -- to promote stable, racially integrated

34

neighborhoods -- ran afoul of First Amendment guarantees because it prevented communication of specific and truthful information. Id. at 96-97, 97 S. Ct. at 1620, 52 L. Ed. 2d at 164.

Ladue, supra, illustrates a signage regulation that prohibits too much protected speech.  There, the city adopted an ordinance prohibiting homeowners from displaying any signs on their homes with the exception of "For Sale" or "Sold" signs, signs identifying the house, and signs warning of a dangerous condition on the property.  512 U.S. at 45, 114 S. Ct. at 2040, 129 L. Ed. 2d at 41.  The terms of the ordinance therefore prohibited a homeowner from placing a two-foot by three-foot sign on her lawn declaring her opposition to war in the Persian Gulf and a smaller sign in a second-story window stating "For Peace in the Gulf."  Id. at 45-47, 114 S. Ct. at 2040-41, 129 L. Ed. 2d at 41-42.

The Supreme Court observed that the combination of a general speech restriction with multiple exemptions permits the government to select messages it deems permissible.  Id. at 51, 114 S. Ct. at 2043-44, 129 L. Ed. 2d at 45.  The Supreme Court recognized that the stated purpose of eliminating visual clutter is a valid public purpose, but found that the ordinance "almost completely foreclosed a venerable means of communication that is both unique and important, . . .[and] has totally foreclosed that medium to political, religious, or personal messages."  Id.

35

at 54, 114 S. Ct. at 2045, 129 L. Ed. 2d at 46-47.  The Supreme Court therefore declared the municipal ban on virtually all residential signs violative of the First Amendment.  Id. at 58, 114 S. Ct. at 2045, 129 L. Ed. 2d at 49.

C.

Metromedia, Linmark, and Ladue addressed billboards and signs that may be placed on a lawn or in the window of a house. The billboards at issue in Metromedia, supra, were static billboards displaying a single message for a fixed period of time as long as a month or more before a new message was affixed to the surface of the billboard.  453 U.S. at 496, 101 S. Ct. at 2886, 69 L. Ed. 2d at 807.  Since the Metromedia decision, new methods of displaying messages, such as electronic messaging centers, have developed, and various governmental units have reacted to their introduction by commercial and noncommercial users.  Electronic messaging centers display electronically changeable messages.  The text may change frequently by the use of scrolling text or substituting a series of different messages on the screen.  Opinions addressing municipal regulations of such signage inform our evaluation of regulations governing digital billboards because such devices are similar to digital billboards in virtually all respects other than size.

In Naser Jewelers, supra, the Court of Appeals held that an ordinance prohibiting all electronic messaging centers was

36

constitutional. 513 F.3d at 30. In reaching that conclusion, the court determined that the ban was content neutral, and applied to commercial and noncommercial entities. Id. at 30-31. Determining that the Central Hudson test applied to restrictions involving solely commercial speech, id. at 33, the Court of Appeals invoked the Clark/Ward intermediate scrutiny standard. Under this test, if the restriction is content neutral, the ordinance is constitutionally permissible "if it is narrowly tailored to serve a significant government interest and leaves open alternative channels of communication. An ordinance is narrowly tailored if it does not burden substantially more speech than necessary to further the government's legitimate interests[.]" Id. at 30. Moreover, the court held that the ordinance "need not be the least restrictive means to serve those interests." Ibid.

Notably, the panel did not consider the ban on electronic message centers as a ban on an entire medium of communication. Id. at 36. The panel also emphasized that billboards and other signs were permitted, and that they constituted an alternative means of communication. Ibid. The court also underscored the principle that "[t]he maximizing of profit is not the animating concern of the First Amendment." Id. at 37. The court therefore held that the ban on electronic messaging centers was constitutional. Ibid.; see also La Tour v. City of

37

<u>Fayetteville</u>, 442 <u>F.</u>3d 1094, 1096-97 (8th Cir. 2006) (applying <u>Clark</u>/<u>Ward</u> standard to hold as constitutional ban on electronic message boards displaying anything other than time, date, and temperature); <u>Carlson's Chrysler v. City of Concord</u>, 938 <u>A.</u>2d 69, 72-74 (N.H. 2007) (applying <u>Central Hudson</u> standard to hold total ban of electronic message boards constitutional; concurring justice would apply <u>Clark</u>/<u>Ward</u> standard).

VI.

We commence our analysis with the question of whether the <u>Central Hudson</u> commercial speech standard or the <u>Clark</u>/<u>Ward</u> time, place, and manner standard governs our review of the Ordinance.  We acknowledge that applying either standard often produces the same conclusion; yet judicial scrutiny of the constitutionality of government regulation of speech deserves precision.  In recent years, several courts have sought to clarify those instances when the <u>Central Hudson</u> standard or the <u>Clark</u>/<u>Ward</u> standard governs.  <u>See</u> <u>Naser Jewelers</u>, <u>supra</u>, 513 <u>F.</u>3d at 30 (employing <u>Clark</u>/<u>Ward</u> standard to review challenge to ordinance prohibiting all electronic messaging centers); <u>Carlson's Chrysler</u>, <u>supra</u>, 938 <u>A.</u>2d at 74 (Duggan, J., concurring) (declaring <u>Central Hudson</u> governs only when regulation restricts only commercial speech).

We conclude that an ordinance or statute regulating signs, including billboards of any form, and affecting commercial as

38

well as noncommercial speech should be examined in accordance with the Clark/Ward time, place, and manner standard. Central Hudson, supra, addressed purely commercial speech. 447 U.S. at 561, 100 S. Ct. at 2349, 65 L. Ed. 2d at 348. There, a state utility commission adopted a regulation imposing a total ban on electric utilities from all advertising promoting the use of electricity. Id. at 558, 100 S. Ct. at 2347, 65 L. Ed. 2d at 346. The standard fashioned to evaluate the constitutionality of the ban concerned solely commercial entities and the message they sought to disseminate. Id. at 566, 100 S. Ct. at 2351, 65 L. Ed. 2d at 351. The standard also addressed a total ban of a particular message. See id. at 571-72, 100 S. Ct. at 2354, 65 L. Ed. 2d at 354-55.

The Clark/Ward standard, however, is generally applicable to content-neutral regulations restricting or regulating expression by those seeking to advance commercial ventures or broad noncommercial interests. In many instances, the government action does not impose a complete ban on a particular speaker or mode of expression. For example, in Ward, supra, the City of New York adopted a regulation to address complaints of poor sound quality at events staged at an open-air theater in Central Park and complaints of excessive noise by those in other areas of the park and nearby residents. 491 U.S. at 784-88, 109 S. Ct. at 2750-52, 105 L. Ed. 2d at 670-72. The regulation

39

required those using the open-air theater to comply with noise standards and directed those using the sound system to employ designated sound engineers.  Id. at 78, 109 S. Ct. at 2751, 105 L. Ed. 2d at 672.  Noting that the sound-level regulation was content neutral and did not prohibit the expression of ideas, the Court departed from the Central Hudson commercial speech standard and used a time, place, and manner standard to evaluate the constitutionality of the regulations.  Id. at 802, 109 S. Ct. at 2760, 105 L. Ed. 2d at 683.

We conclude that this appeal is best addressed using the Clark/Ward standard.  Here, E&J explained to the Planning Board the variety of commercial and noncommercial messages that digital billboards could convey.  E&J took pains to compare the flexibility and versatility of a digital billboard to the single message static billboard.  E&J also emphasized the ability of a digital billboard to rapidly respond to the need to broadcast emergency messages and the cost-effectiveness of this form of advertising to advance the interests and special needs of non-profit groups in the Township.  In other words, E&J advocated a form of advertising not limited to commercial messages.

Moreover, the prohibition of digital billboards adopted by the Township does not bar all outdoor, off-premises advertising. Signs, other than billboards, are permitted, albeit with certain conditions, in the Township, and static billboards are permitted

40

in the M-2 zone along I-287. In fact, three static billboards can be erected within the M-2 zone. We therefore conclude that the Clark/Ward standard is the appropriate standard to evaluate the Ordinance at the center of this appeal.

Under that standard, although the Ordinance carries a presumption of validity, Bell, supra, 110 N.J. at 394, when faced with a constitutional challenge to its legislation, the Township must demonstrate that the prohibition of digital billboards is content neutral, that it is narrowly tailored to serve a recognized and identified government interest, and that reasonable alternative channels of communication exist to disseminate the information sought to be distributed, Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2757-58, 105 L. Ed. 2d at 675; Clark, supra, 468 U.S. at 293, 104 S. Ct. at 3069, 82 L. Ed. 2d at 227. In assessing whether an ordinance is narrowly tailored, the inquiry is whether it "promotes a substantial government interest that would be achieved less effectively absent the regulation." Ward, supra, 491 U.S. at 799, 109 S. Ct. at 2758, 105 L. Ed. 2d at 680 (quoting Albertini, supra, 472 U.S. at 689, 105 S. Ct. at 2906, 86 L. Ed. 2d at 548). A restriction on speech may not substantially burden more speech than necessary to further the government interest, but identification of another alternative that might be less restrictive of speech to achieve the desired end does not render

41

the ordinance invalid.  Id. at 798-99, 109 S. Ct. at 2757-58, 105 L. Ed. 2d at 680-81.

Here, there can be little, if any, debate that the Ordinance is content neutral.  Unlike the ordinance addressed in DeAngelo, supra, which permitted a temporary sign to announce the opening of a store, but barred a union from displaying a rat balloon at the site of a business employing non-union labor, 197 N.J. at 481-82, the Township ban of digital billboards addresses a manner of communication, not its content.  See Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48, 106 S. Ct. 925, 928-29, 89 L. Ed. 2d 29, 37-38 (1986) (declaring regulation content neutral because it serves purposes unrelated to content of expression); Naser Jewelers, supra, 513 F.3d at 32 (declaring municipal ban of electronic message boards content neutral because ordinance banned category of communication, not message).

E&J urges that the Township has suppressed an entire mode of communication.  That is simply not the case.  All manner of signs are permitted as well as static billboards.  Furthermore, other than frustrating E&J's attempt to maximize profit by utilizing a different form of billboard, there is no suggestion that the Township had an ulterior motive antithetical to free expression.

E&J also argues that the stated reasons have not been amply

42

supported by the Township. It focuses on the studies it submitted and the existence of digital billboards in places proximate to the Township along the I-287 corridor and along other heavily travelled highways. It contends this information belies the interests invoked by the Township.

The government interests identified by the Township -- aesthetics and the safety of motorists travelling on I-287 -- have long been recognized as legitimate and substantial government interests, particularly related to billboards. Metromedia, supra, 453 U.S. at 507-08, 101 S. Ct. at 2892-93, 69 L. Ed. 2d at 815. Yet, when a governmental entity restricts speech, it must do more than simply invoke government interests that have been recognized over time as substantial. In other words, there must be a modicum of support for the invoked government interest.

To be sure, the record demonstrates that the Township has labored to preserve the bucolic character of sections of the municipality and to minimize the impact on a residential neighborhood across the highway. The Township Council also cited safety concerns. The Township, however, permits industrial and corporate development and has directed that static billboards may be erected in the M-2 zone. In fact, three static billboards can be erected along I-287 in the M-2 zone. The record provides no basis to discern how three static

43

billboards are more aesthetically palatable than a single digital billboard.

Clearly, the action by the governing body was informed by the work of the Planning Board and the advice of the Township Planner. That official informed the governing body that there was an absence of research upon which he could recommend standards to address those concerns. Yet, the record reveals the existence of a considerable body of literature discussing the impact, or lack thereof, of digital billboards on traffic safety and standards that can be applied to such devices to enhance traffic safety and mitigate aesthetic concerns. A respected report concluded its exhaustive review of the impact of such devices stating that ample information existed to make informed decisions about such devices. In addition, NJDOT had promulgated regulations governing off-premises digital billboards. See N.J.A.C. 16:41C-11.1. Moreover, a digital billboard had been erected along I-287 in a neighboring municipality. It appears that standards were available to the Township to inform its decision-making.

Finally, motor vehicle accident statistics do not prove either party's argument regarding the danger of digital billboards. To be sure, the Township has experienced more than twice the number of motor vehicle accidents along I-287 than the neighboring town, but the numbers standing alone do not lead

44

inexorably to the conclusion that the installation of a single digital billboard in the Township will exacerbate the accident rate. The accident rate in the Township may be attributable to many other factors such as weather, road design or road maintenance. The record is also bereft of any examination of the safety impact of the installation of three static billboards. In short, bare numbers do not carry the public safety debate.

We recognize that the Township was not required to adopt the least restrictive means to further its interests. Rather, an ordinance is considered to be narrowly tailored "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." Ward, supra, 491 U.S. at 799, 109 S. Ct. at 2758, 105 L. Ed. 2d 680 (alteration in original) (quoting Albertini, supra, 472 U.S. at 689, 105 S. Ct. at 2906, 86 L. Ed. 2d at 548). Here, however, in the face of a record founded only on unsupported suppositions, fears, and concerns, we need not address whether the course taken by the governing body is reasonable under all of the circumstances.

We do not suggest that no municipal restriction on off-premises digital billboards or multiple message centers can pass constitutional muster. Contrary to E&J and amicus, we do not consider the ban adopted by the Township a complete ban on a

45

form of communication but rather a restriction on a subset of off-premises signage. A more robust factual record in support of the cited government interests deemed substantial may satisfy the Clark/Ward standard. By the same token, the information accumulated over the last six years concerning the aesthetic and safety impacts of such devices may assuage the governing body's concerns.

In sum, we do not quarrel with the proposition that aesthetics and public safety are substantial government interests, particularly when the medium of expression is an outdoor, off-premises advertising device. See Metromedia supra, 453 U.S. at 507-08, 101 S. Ct. at 2892-93, 69 L. Ed. 2d at 815. On the other hand, a governing body seeking to restrict expression cannot simply invoke those interests with scant factual support informing its decision-making and expect to withstand a constitutional challenge. In the end, the record provides no explanation of the qualitative differences between three static billboards and a single digital billboard. The record also belies the assertion that no standards existed to address aesthetic and public safety concerns. This absence requires us to declare § 112-53.1(C)(3) of Ordinance 3875 unconstitutional.

## VII.

The judgment of the Appellate Division is reversed.

46

CHIEF JUSTICE RABNER, JUSTICES PATTERSON, FERNANDEZ-VINA and SOLOMON, join in JUDGE CUFF's opinion.  JUSTICES LaVECCHIA and ALBIN did not participate.